[S. F. No. 14667. In Bank.—September 16, 1932.]

HAMILTON MURRAY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, CARL R. LONG et al., Respondents.

342

Hamilton Murray, *in pro. per.*, and W. R. Wisecarver for Petitioner.

A. I. Townsend and McIntyre Faries for Respondents.

CURTIS, J.—Action to annul an award of the Industrial Accident Commission in favor of Carl R. Long and against the petitioner, Hamilton Murray.

Petitioner resides at Ross, Marin County, in this state. Some time prior to June 3, 1931, he purchased an airplane from the Curtiss-Wright Airplane Company, at its factory situated at Robertson, Missouri. He desired someone "to fly" the machine from the plant of the company in Missouri to his home in California, and so informed the company. The company recommended Long, and thereafter Long and Murray arranged through correspondence that Long should fly the plane out to California for his actual expenses incurred in making the trip, which expenses were estimated to be $5 per day. Petitioner sent a certified check for $85, which was delivered to Long as expense money for the trip. On June 4, 1931, the Curtiss-Wright Company delivered to Long a plane for Murray, and Long began his trip therein to California. After his arrival in this state, and while he was near Los Alamos on his way to petitioner's home, he met with an accident in which the plane was wrecked and he was seriously injured. He made application to the Industrial Accident Commission for compensation, and after a hearing thereon the Commission made an award for compensation in Long's favor and against Murray. The latter, after a motion for a rehearing was made and denied by the Commission, brought this proceeding to review and annul said award.

In support of his petition Murray contends that the Commission exceeded its jurisdiction in rendering said award in

three particulars: 1. That Long was an independent contractor in his undertaking to bring the plane from Missouri to California. 2. That Long's employment was casual and not in the trade, business or profession or occupation of Murray. 3. That Long stepped out of the course of his employment when he accepted delivery of machine No. 10984, instead of machine No. 10983, from the Curtiss-Wright Company at its plant at Robertson, Missouri.

In its very essence the contract between Murray and Long was that Long should fly Murray's plane from the factory in Missouri to Murray's home in California and that Murray should pay Long's actual traveling expenses during the time spent by Long in making the flight. Long was either an employee or an independent contractor. By section 8 (b) of the Workmen's Compensation Insurance and Safety Act, it is provided that, "Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of this act. The term 'independent contractor' shall be taken to mean for the purposes of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

The evidence showed that Long insisted on traveling the southern route. In all other respects he followed the suggestions and directions of Murray as to the manner in which the trip should be made. On May 14th he wrote to Murray a letter and stated therein that, "I didn't know if you wanted ship hangared of a night, or just tie it down, although when staying over night at fields like this one everything has to be put in hangar at night. It is your airplane and you are paying the expenses of getting it to your vicinity, and I am not telling you what to do." On May 29th, probably in answer to Long's letter of May 14th, Murray wrote Long a lengthy letter in which he informed Long that he had sent to a Mr. Parks a check for $85 to pay Long's traveling expenses and the expense of operating the machine on the trip, and in which he gave Long numerous suggestions and directions to be followed on the trip out. As to the route to be traveled, Murray stated he.

would leave it to Long's discretion. He cautioned him to take plenty of drinking water and chocolate with him "when you hit a dry country". He wrote regarding the 4B–"B.G." plugs as the ones to use on the engine, they having been recommended by an acquaintance of his. He mentions "frequent valve oiling", and suggests that it would be less expensive to stop in smaller towns. He states also in his letter that he has known of some pilots who had stopped at ranches and had been guests for several days giving the owners "a little hop". He informed Long that he [Murray] was going to Coronado and if Long traveled the southern route maybe he might make there a connection—meaning a chance to fly a machine back to his home. In this event Murray would fly his own machine up to his home. Finally Murray closes his letter by stating that he is inclosing a note to the Curtiss-Wright people "so that they will turn over the ship to you", and adds a postscript directing that Long drop him a line by airmail the first day or two, and a wire on the morning of the last day, stating the time and place of his expected arrival.

In the case of *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570, 571], the question was before the court as to whether the person injured was an employee or an independent contractor. The injured person, Downing, at the time of receiving his injury was shingling a house under a contract with Hillen, the owner of the building, who was engaged in the business of building and selling houses. The contract between Downing and Hillen was that the former should do the shingling on the house then under construction and was to be paid at the rate of $1.25 for each 1,000 shingles laid. While so engaged he sustained the injury complained of. In passing upon the question as to whether Downing was an employee or an independent contractor this court said: "It is admitted that Downing was at the time of his injury actually performing services for Hillen. Consequently, the burden of proof rests upon Hillen to establish that Downing was an independent contractor. (Sec. 19 d [1].) It was therefore necessary for him to show that Downing was, within the definition of the term, a person rendering 'service, other than manual labor, for a specified recompense for a specified result, under control of his principal as to the result of his work only and not

as to the means by which such result is accomplished.' (Sec. 8b.) Whether or not the relation of employer and employee existed in this case, under the oral contract entered into, is a question of mixed law and fact, to be proved like any other question. The finding of the Commission, in effect, that the relation existed between Hillen and Downing is binding on the court. (*Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 180 Cal. 497, 499 [181 Pac. 788].) Unless there is such an entire absence of evidence in the record as to render the finding unreasonable, or in excess of the powers of the Commission, the court is not empowered to set it aside. (*Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 598 [200 Pac. 17].) The award of the Commission may be annulled only if there is no substantial evidence in support of its findings. (*Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 124 [210 Pac. 820].)''

 Applying the principles of law approved in that case to the facts in the instant action, we think it must be held that the evidence before the Commission was sufficient to support its finding that Long was an employee, and not an independent contractor. He was rendering service for Murray, and for this service Murray paid Long compensation. The fact that the amount paid Long was only sufficient to meet his personal expenses during his employment does not affect his status as an employee. A person may work for his board and lodging, and during such employment he is just as much an employee as if he were paid a stipulated sum per day, or for any other fixed period of time. The sum paid might be only enough to pay his board and lodging, or it might be more, or even less. The amount of the wage has no bearing whatever upon the relation existing between him and his employer. As Long was rendering service to Murray for an agreed compensation, the burden was upon Murray to prove by competent evidence that Long was an independent contractor and not an employee. Assuming that there was evidence before the Commission tending to establish that fact, it was the province of the Commission to weigh that evidence, and if there was a substantial conflict in the evidence on that issue, the determination of the Commission was final. We think that there was not only such a conflict in the evidence, but that the evidence before the Commission

greatly preponderated in favor of Long's contention that he was an employee. Murray owned the machine. He was paying all expenses of its being removed from the factory to his home. He was in control of the whole enterprise. Not only did he have the right to control Long as to the results of the latter's work in delivering the plane to him, but he had control of the means by which the removal was accomplished, and he actually exercised this right of control. Nothing was left to Long's discretion except the choice of the route. As to all other matters Murray gave Long express directions. ▮ As the owner of the airplane and the person solely interested in having it brought from the factory to his home, he necessarily had complete right of control over all its movements. Whether he exercised this right in every respect is not decisive of the question. It is the right to exercise control, and not the exercise of that right which determines whether the person performing the service is an employee or an independent contractor. Upon this question, this court said in the Hillen case (p. 581): "One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. (*Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385, 399 [Ann. Cas. 1918C, 664, 158 N. W. 875].) It is not a question of interference, or noninterference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act itself or the failure to act." In this case we have evidence that Murray gave Long numerous suggestions and some direct orders as to the method and manner to be followed by Long in flying the airplane on the proposed trip. Considering the relations of the parties, even the suggestions given by Murray were in reality orders, and Long would be justified in acting upon them, and would have been held legally responsible for failure to follow them. Taking the evidence as a whole, we think that there can be no question but that it was sufficient to justify the finding of the Commission that Long was an employee of Murray at the time he sustained the

injury for which he now seeks compensation. Some reliance is placed in support of the petition upon the recent cases of *Becker* v. *Industrial Acc. Com.*, 212 Cal. 526 [298 Pac. 979], and *New York Indemnity Co.* v. *Industrial Acc. Com.*, 213 Cal. 43 [1 Pac. (2d) 12]. Neither of these cases is, we think, in conflict with the conclusion arrived at in the instant case. In the Becker case the employee was killed by a passing automobile just after he had alighted from a street-car. At the time of his injury he was engaged in an endeavor to serve a summons, given him by an attorney. The facts as recited in the opinion show that the attorney gave to the deceased two addresses where the defendant could possibly be found, but gave him no instructions or directions as to how or when the summons should be served. The deceased was to receive one dollar for making the service, and was at liberty to adopt any means of travel and any method of procedure which suited his convenience and could use his own judgment in making the service. The decision holds that while the deceased at the time he met his death was under the control of his principal as to the result of his work, he was not as to the means by which the result should be accomplished.

In *New York Indemnity Co.* v. *Industrial Acc. Com.*, *supra*, the injured person was a newsboy selling papers on the streets of San Francisco. He bought his papers outright from the publishers and sold them to the public. His profit was the difference between what he sold the papers for and the amount he paid to the publisher for them. There was no contract of hire between him and the publisher as there was between Murray and Long. The publisher designated the corner to be occupied by the newsboy while selling his papers, and required him to be diligent and aggressive in his efforts to sell as many papers as possible. The publisher did not attempt, however, to direct or control the newsboy as to the means or method the latter might employ in selling the papers. This was left entirely to the discretion of the newsboy. That case differs radically from the present case. Here Murray owned the machine, hired Long to fly it, and paid the latter for his services. Not only so, but Murray not only had the power to control the actions of Long in making the trip, but gave the latter

specific and detailed directions as to how the trip should be made.

The further contention of Murray that Long's employment was casual, and was not within the trade, business or profession of Murray, we think is equally untenable. Murray not only owned at least one plane before he purchased the one from the Curtiss-Wright Company, but the evidence shows that he held a "dealership" for the sale of airplanes from that company which was a contract which allowed him a discount or commission on planes purchased by him from said company. Asked what he intended to do with the plane purchased from the Curtiss-Wright Company, he said: "I had no definite actual sale made. · I had been promised the very first machine. By having the first machine out here, I would have been in a very good position because it was about the newest thing out in aviation and supposed to be reasonable. . . . If I could have sold the thing, I would have sold it and made something out of it, it being the very first ship." He also authorized Long to sell the machine if he could find a buyer on the trip out. This evidence, we think, was sufficient to justify the implied finding of the Commission that Long's employment was not casual. While Murray's regular business was that of land appraiser, it is quite evident that he had stepped out of his regular calling and was engaged in an endeavor to sell airplanes on the side. His employment of Long to assist him in this enterprise was not, therefore, casual, but, on the other hand, was in the course of a business in which he was endeavoring to establish himself. The fact that he had not up to that time actually made a sale of an airplane did not render the service performed by Long without the scope of that business. (*Hendrickson* v. *Industrial Acc. Com.*, 215 Cal. 82 [8 Pac. (2d) 833].)

The third and last contention of petitioner in support of his petition to have the award against him set aside and annulled by this court is that Long departed from the course of his employment when he accepted delivery of a machine from the Curtiss-Wright Company other than the precise one purchased by Murray from said company. We have gone carefully over the record of the evidence introduced before the Commission at the hearing of this matter. We fail to find any evidence that Long was ever

informed by Murray or anyone else that Murray had purchased any particular machine from the Curtiss-Wright Company or that Long was directed by Murray to get from the company any particular machine. Murray had purchased a machine from the company and he wrote Long to call, get the machine, and drive it to Murray's home. In Murray's last letter to Long, being the letter heretofore referred to, and dated May 29, 1931, Murray writes, "I enclose a note for the Curtiss-Wright people so that they will turn over the ship to you." The note referred to, omitting the formal parts, read as follows: "Mr. Carl Long, a transport pilot, would like to make the trip out and kindly has consented to fly the Junior out to San Francisco Bay District. I trust that you will have a ship ready for me as per your last letter." It will be noted that the only reference to the kind of a "ship" Long was to get from the Curtiss-Wright Company was that it was to be a "Junior". It is conceded that such a "ship" was delivered to Long by the Curtiss-Wright Company and that Long "flew" it out to the coast. It appears, however, that Murray in fact bought machine No. 10,983, but that the company delivered to Long machine No. 10,984. There is some dispute as to whether these two machines were not precisely alike except as to their serial numbers. Long, however, was not directed to get a machine bearing any particular number, and it does not appear that he knew the number which Murray's machine bore. When Long called at the office of the company and presented Murray's written order for a machine, he was told that Murray's machine would be ready for delivery the following Thursday. On that day Long again put in his appearance at the company's office, fixed up the necessary papers in order to have the machine delivered to him, and made ready to take the machine from the company. He was taken to the assembly room and the machine intended for Mr. Murray was not ready. He was given another machine by the company. While there was some conversation within his hearing between the representatives of the company that Mr. Murray's machine was not ready and that he would be given another, Long testified that, "I didn't know the difference that it was not the ship that Murray was supposed to get. So about eleven o'clock I go right along in there

and took off on my way out here with an airplane No. 10,984.'' It seems that the machine which Murray was to receive from the Curtiss-Wright Company was to be numbered 10,983, but as we have seen, Murray did not inform Long of that fact, nor did he direct Long to accept from the company a machine bearing that or any particular number. He simply directed Long to secure from the Curtiss-Wright Company the machine purchased and fly it to California, and Long was given no power or discretion to determine whether the machine the company delivered to him was the right machine or not. In fact he had no information from Murray, or from any other person for that matter, which would have enabled him to determine whether the machine delivered to him was or was not the machine Murray purchased. Under the circumstances he was justified in accepting from the company the machine it delivered to him as the machine which Murray had purchased and as the machine which Murray had hired him to fly to California. It is true that he testified that he heard one representative of the Curtiss-Wright Company say to another that the ship intended for Murray was not ready, and that he was told that he could take the other ship, but he also testified that he did not know the difference that it was not the ship Murray was supposed to get. Of course, if Murray had in fact purchased ship No. 10,983, and had instructed Long of that fact and had directed him to get a ship bearing that number from the company, or had given him any directions, which would have enabled him to determine whether the ship he accepted was the right ship, the situation would have been entirely different, and Murray might not have been liable to Long for any injury the latter might have sustained after he had departed from the instructions given him by Murray. As it was, however, in the absence of any definite instructions as to the particular machine he was to receive from the company, and in view of his testimony that he did not know the difference between the two machines and supposed he was getting the machine which Murray bought, we think there is substantial evidence to support the conclusions of the Commission that Long did not knowingly depart from the course of his employment, but to the best of his knowledge and information was attempting to comply with the instructions of Murray, his em-

ployer, when he accepted machine No. 10,984 from the company. As he was injured while flying this machine the award of the Commission compensating him for his injuries so received should be sustained.

The award is accordingly affirmed.

Preston, J., Langdon, J., Tyler, J., *pro tem.*, Shenk, J., and Waste, C. J., concurred.

Rehearing denied.