[Civ. No. 1727.   Fourth Appellate District.—August 21, 1936.]

LYNESS BOHANON, as Administratrix, etc., Respondent,
v. JAMES McCLATCHY PUBLISHING COMPANY
(a Corporation) et al., Appellants.

190

McFadzean & Crowe, Everts, Ewing, Wild & Everts and A. W. Carlson for Appellants.

Halbert & Stone for Respondent.

JENNINGS, J.—The plaintiff instituted this action to recover from the defendants damages for personal injuries sustained by him as the result of a collision which occurred between an automobile that he was operating and another automobile which was being operated by one Daniel Calvin Smith. It was alleged in plaintiff's amended complaint that at the time of the collision Smith was acting as the employee and agent of the defendants George Engebrecht and James McClatchy Publishing Company and was in the course of his employment and that the collision and plaintiff's consequent injuries were caused by Smith's negligent operation of the automobile which he was driving. The action proceeded to trial before the court without a jury and resulted in the rendition of a judgment in plaintiff's favor in the amount of $15,414.45. From the judgment thus rendered the de-

fendants James McClatchy Publishing Company and George Engebrecht appeal. The appeal of the publishing company will herein be first considered.

Appellant's first contention is that the evidence which was produced during the trial of the action showed that the defendant George Engebrecht was not appellant's employee or servant but on the contrary was an independent contractor and that therefore irrespective of the relationship which Smith bore to Engebrecht, the trial court's finding that, at the time of the collision Smith was the employee, agent and servant of appellant and Engebrecht, and was acting within the scope of his employment is lacking in evidentiary support. Proper consideration of this primary contention requires some reference to the evidence which was submitted to the court bearing on the question of the relationship which existed between Smith and Engebrecht and between Engebrecht and appellant.

It may first properly be observed that no evidence was presented which tended to show that Smith was employed by appellant or that the latter had any knowledge that the former was engaged in the task of delivering appellant's newspapers at the time of the accident. The evidence did show that when the collision occurred Smith was delivering copies of a newspaper which was published by appellant in accordance with the terms of a written agreement entered into between Engebrecht and Smith. For the purpose of giving prior consideration to the question of the relationship which Engebrecht bore to appellant it will be temporarily assumed that Smith was appellant's employee at the time of the accident.

The evidence bearing on the question of Engebrecht's relationship to appellant consisted principally of a written contract entered into between these parties on May 1, 1933. The language of this instrument is as follows:

"AUTOMOBILE ROUTE CARRIER'S CONTRACT.

"This agreement, made this 1st day of May, 1933, at Fresno, California, by and between James McClatchy Publishing Company, a corporation organized and existing under the laws of the State of California, party of the first part and hereinafter called the 'company', and Geo. Engebrecht, of Lindsay, California, party of the second part, and hereinafter called the 'contractor'.

"Witnesseth: That for and in consideration of the covenants and conditions hereby agreed to be performed and kept by the contractor, the company, publishers of The Fresno Bee-Republican, hereby leases to said contractor the automobile route of The Fresno Bee-Republican, State of California, covering the territory known as 'Automobile Route Lindsay' as may be arranged and designated by said company from time to time upon the following terms and conditions:

"1. That the contractor is not an employee of the company, but is an independent contractor, and as such shall furnish and provide at his own cost and expense, all equipment required by him in performing the obligations of this agreement, and further shall have no right of reimbursement from said company for any cost or expense of any nature or kind incurred or contracted by him in the performance of the obligations of this agreement upon his part to be performed, except as hereinafter set forth:

"2. The contractor covenants and agrees to indemnify and save and hold the company free and harmless from any and all loss or damage suffered or incurred by said contractor, or any agent, servant or employee of said contractor arising out of the performance of the obligations of this agreement upon the part of the contractor to be performed or otherwise.

"3. The contractor further covenants and agrees to insure all agents, and employees of said contractor in compliance with the provisions of the Workmen's Compensation Act of the State of California, and to comply with all laws, regulations and ordinances of the United States Government, State of California, and further covenants and agrees not to distribute, sell, or represent any other newspaper, periodical, pamphlet or other printed matter along said route in connection with the newspaper of said company or otherwise, without the written consent of said company first be obtained and without said written consent not to otherwise operate over said route for any other individuals, partnership, company or corporation so as to conflict in any way with the distribution and sale of said The Fresno Bee-Republican.

"4. That said contractor further covenants and agrees to deliver the Fresno Bee-Republican each evening and Sunday

morning to every subscriber on said route at the earliest possible moment in a manner satisfactory to the company and to the subscribers, and will take delivery of said papers from said company at any time or place that may be designated by said company.

"5. That the contractor further covenants and agrees that he shall pay the company at its office in Fresno, on or before the 10th of each month for all papers supplied to him by said company for the previous month at the rate of ($1.90 daily) per one hundred (100) copies and that the ($3.90 Sunday) price of the Fresno Bee-Republican to the subscriber shall be ninety-five cents (95c) per month, said contractor to make all collections monthly from every subscriber.

"6. It is particularly understood and agreed that until the bill for all papers received by said contractor during the previous month has been paid, all money collected by said contractor from subscribers shall belong to the company. It is further agreed and understood that all advance payments on Fresno Bee-Republican subscriptions made by subscribers to said contractor must be turned over to the said company when said subscription is paid in advance for a period exceeding thirty-one (31) days.

It is still further agreed and understood that all advance payments made by the subscriber to said contractor is the property of the said company until expiration thereof.

"7. That said contractor shall have no right or title to the good will and subscription list of said route, nor the right to sell or deliver The Fresno Bee-Republican to any parties in said district, save under the term of this agreement, title to said route to remain with James McClatchy Publishing Company. Said contractor agrees not to sell, assign, or transfer, either voluntarily, or involuntarily, any part or parts of said route, or any interest in this agreement, to anyone else, and under no consideration to sell papers to newsboys, or carriers in Fresno, and further agrees not to deliver any of said papers to anyone residing outside the territory covered by said route.

"8. The said contractor further agrees to give two weeks' notice in writing to said company of his intentions to give up the route, and on ceasing to serve as a carrier, deliver to the circulation manager of said company, or someone desig-

nated by him, all accounts of subscriptions, together with all route books and subscription lists, and shall teach his successor the route thoroughly without causing any unnecessary delay in the delivery of papers on said route.

"9. The said contractor agrees to have a substitute who can carry the route at any time in case of sickness or accident, and will do all he can to increase the number of subscribers to The Fresno Bee-Republican on said route.

"10. The company reserves the right to take over and assume charge and management of the route above-mentioned at any time, in event that the management of the said route or the services performed by the said contractor shall fail to prove satisfactory to the company. In the event the company sees fit to take charge of said route, the contractor then agrees to teach his successor the said route without any delay and if for any reason the contractor refuses to teach his successor, the company shall have the right to use said contractor's bond money for any expense that might be caused to teach his successor said route. In the event of default of any terms, conditions, covenants, or of stoppage of his machine, route is to be taken care of by him, either through the supplying of another machine or substitute to complete the work or of remunerating the company for any machine or man furnished him for the completion of the work.

"11. It is mutually agreed and understood that the contractor shall furnish automobile service in the territory heretofore assigned him and that the company agrees to allow the contractor, in full and complete remuneration for the services of said automobile, the flat sum of $115.00 for the use of his car to cover said route. The contractor is urged to provide adequate liability insurance which will relieve the contractor of any and all liability resulting from accident, collision, fire, or theft, to his machine.

"12. In consideration of said contractor depositing with the said company the cash sum of ———— Dollars, ($——), receipt thereof is hereby acknowledged, the company hereby agrees to refund the above stated amount, plus five per cent interest per annum, provided contractor has fulfilled all obligations set forth in this contract. It is agreed and understood the above mentioned cash deposit will not be returned to contractor until his successor has

received all route lists containing full and complete names and addresses of all Fresno Bee-Republican subscribers on this route, and has had a reasonable length of time to verify collections. In case of any violation of this contract or any part thereof the said company shall deduct and retain from the above-mentioned cash deposit an amount sufficient to cover any damages sustained by them.

"Contractor sign here    GEO. ENGEBRECHT.

"FRESNO BEE-REPUBLICAN

"Representative    H. V. TANNER."

It is now settled in California that the question of whether an individual is an employee or servant of another or whether he is an independent contractor is to be determined, in the final analysis, by the right of control which the assumed employer is entitled to exercise over the actions of the assumed employee. As was said in *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 581 [250 Pac. 570]: "One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." This language has been quoted with approval in the following decisions: *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 208 Cal. 715, 718 [284 Pac. 661]; *Murray* v. *Industrial Acc. Com.*, 216 Cal. 340, 346 [14 Pac. (2d) 301]; *San Bernardino County* v. *Industrial Acc. Com.*, 217 Cal. 618, 623 [20 Pac. (2d) 673]. The language of the contract between appellant and Engebrecht should therefore be examined with this test in mind.

It must be conceded that, in some respects, the instrument fails to show that appellant retained the right of control over the actions of Engebrecht in his performance of the duties imposed upon him by the contract and that to this extent, the language of the agreement indicates that Engebrecht's status was that of an independent contractor rather than that of a mere employee. Perhaps the feature of the contract which is most persuasive in this regard is that provision wherein Engebrecht agreed that on the 10th of each month he would pay for all papers supplied to him by appellant during the preceding month at a specified rate per hundred copies and that the price to be charged each sub-

scriber should be a certain stated sum per month. This provision furnishes support for appellant's contention that Engebrecht was simply contracting to purchase the papers published by appellant at a certain designated price and that the compensation which he would derive from the transaction would be measured by the difference between the purchase price and the price which he would obtain from subscribers. It is apparent that Engebrecht's position is analogous to that of any retail dealer who buys goods from a manufacturer or jobber and purveys them to his customers, securing compensation for his services in whatever difference there may be between the price which he pays for the goods and the price which he receives on their sale.

Appellant maintains that a broad view of the entire agreement establishes that it was not at all concerned with the details of the task or with the means by which it should be consummated but that it was concerned solely with the result to be accomplished which was the sale of the largest possible number of its papers in the particular territory covered by the agreement. This is but another manner of stating its contention that, under the contract, it retained no right of control over Engebrecht's actions in performing the work.

On the other hand, respondent contends that there is ample evidentiary support for the implied finding that, at the time of the accident, Engebrecht was not an independent contractor but that he occupied the status of appellant's employee. In support of this contention respondent calls attention to certain provisions of the contract which he maintains clearly indicate that appellant's interest was not confined merely to the final result contemplated by the contract but that it was also interested in the manner in which the work was to be done and in the details of its performance.

The provisions of the contract upon which respondent thus relies are the following: First, appellant specifically retained the right to arrange and designate the territory covered by the contract; second, Engebrecht bound himself not to distribute, sell, or represent any other newspaper, periodical, or pamphlet within the territory without appellant's written consent; third, Engebrecht agreed that he would not otherwise operate over the route for any other person, partnership, or corporation in such manner as to

conflict in any way with the distribution and sale of appellant's newspaper without first obtaining appellant's consent thereto; fourth, Engebrecht agreed to make delivery of appellant's publication at the earliest possible moment in a manner "satisfactory to the company and the subscribers"; fifth, Engebrecht agreed that until he had paid for all papers which he had received during the preceding month all money which he had collected should belong to appellant; sixth, Engebrecht bound himself to turn over to appellant all subscription payments made in advance by subscribers which should cover a longer period than 31 days; seventh, Engebrecht was not permitted to sell, assign, or transfer, voluntarily or involuntarily, any part of the route or any interest in the contract to any other person or to sell newspapers to newsboys or carriers in the city of Fresno or to deliver newspapers to anyone residing outside the territory covered by the route; eighth, Engebrecht was given the right to surrender the route on two weeks' notice; ninth, Engebrecht agreed to use his best efforts to increase the circulation of appellant's newspaper on his route.

At first blush, the above specified provisions of the agreement appear to furnish considerable support to respondent's contention and to indicate that appellant was not interested solely in the result which Engebrecht should accomplish but, on the contrary, that it retained a very apparent interest in the details by which the result should be attained. In this connection particular reliance is placed on an additional provision of the agreement which deserves special mention.

This provision is contained in the language of the contract whereby appellant "reserves the right to take over and assume charge and management of the route above mentioned at any time, in event that the management of the said route or the services performed by the said contractor shall fail to prove satisfactory to the company". It is especially urged that the above-quoted language demonstrates that appellant's interest was not confined solely to the results of the work but that it was also concerned with the manner in which Engebrecht should perform the work of distribution.

It is evident that all of the above-stated provisions, including that which reserved to appellant the right to discharge Engebrecht, have some bearing upon the control

which appellant was entitled to exercise over Engebrecht. ■ It may now be regarded as settled in California that the control which has been adopted as the test by which the relationship between two persons is to be measured for the purpose of discovering whether such relationship is that of master and servant is complete or unqualified control. (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, 811 [159 Pac. 721]; *Barton* v. *Studebaker Corp. of America,* 46 Cal. App. 707, 717 [189 Pac. 1025]; *Peters* v. *California Building-Loan Assn.,* 116 Cal. App. 143, 151 [2 Pac. (2d) 439].) It is observed in *Western Indemnity Co.* v. *Pillsbury, supra,* that the word "servant" is generally synonymous with the word "employee" and that the former word is defined in section 2009 of the Civil Code as "one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master". When one person is performing work in which another is beneficially interested, the latter is permitted to exercise a certain measure of control for a definite and restricted purpose without incurring the responsibilities or acquiring the immunities of a master, with respect to the person controlled. (*Western Indemnity Co.* v. *Pillsbury, supra; Moody* v. *Industrial Acc. Com.,* 204 Cal. 668 [269 Pac. 542, 60 A. L. R. 299].) Even one who is interested primarily in the result to be accomplished by certain work is ordinarily permitted to retain some interest in the manner in which the work is done without rendering himself subject to the peculiar liabilities which are imposed by law upon an employer. This must be true because, generally speaking, the quality of the work by which the final result is achieved is reflected in the finished product.

■ Having in mind the test of completeness of control established by the above-cited decisions as the criterion by which to measure a relationship between two persons for the purpose of determining whether such relationship is that of master and servant, we may proceed to an examination of the various provisions of the written contract between appellant and Engebrecht upon which, as above noted, respondent places particular reliance on this appeal.

The provision by which appellant reserved to itself the right to arrange and designate the territory covered by the contract may be disposed of in short order. Concededly, the contract is one that has to do with a newspaper route which by its very nature must be confined within some territorial limits. The description of such limits is in fact nothing more than a necessary location of the route. Retention of the right to change the territorial limits of the route still has to do purely with the subject of location. It does not at all pertain to the details of the work to be done or to the manner in which such details are to be performed.

■ The provisions which prohibit Engebrecht from distributing any other newspaper or periodical within the designated territory and from otherwise operating over the route for any other person, etc., in such manner as to conflict with the distribution of appellant's newspaper without first obtaining appellant's consent thereto have nothing to do with the details of Engebrecht's work or with the manner in which he should perform the work. On the contrary, these provisions relate solely to the final result which is contemplated by the contract. The object of the agreement was to secure the greatest possible number of satisfied subscribers to appellant's publication within the territory specified in the agreement. The distribution of other newspapers in this territory by Engebrecht or his employment by any person other than appellant to do anything that would conflict with his distribution of appellant's publication might affect in a most detrimental manner the object of the agreement. Conceivably, the prohibited acts might have some bearing on the manner in which Engebrecht should perform the work but an unsatisfactory manner of performance would be reflected primarily in the dissatisfaction and possible diminution of the number of subscribers to appellant's newspaper which, as above noted, pertain to the very object of the entire agreement.

■ The provision which obligates Engebrecht to the earliest possible delivery of appellant's publication likewise relates primarily to the satisfaction of appellant's subscribers. Concededly it has a bearing on the manner in which Engebrecht was to perform his work but its importance, from appellant's viewpoint, relates entirely to the matter of satisfaction on the part of appellant's subscribers

which is a feature of the final result to be accomplished by the work of distribution.

The provision which recites that, until Engebrecht has paid for all papers received by him during the preceding month, all money collected by him shall belong to appellant also relates solely to the final result expected to be achieved by the work of distribution. Primarily, the contract is one of purchase and sale whereby appellant agrees to sell and Engebrecht agrees to purchase an indefinite number of appellant's newspapers at a specified price per hundred. It is a matter of common knowledge, of which we are entitled to take judicial notice, that newspapers which are delivered by carrier to the residences of subscribers are paid for by the month. We are also entitled to indulge in the assumption that publishers of newspapers, like other persons who are engaged in the business of producing merchandise for sale and of selling such merchandise, are primarily interested in deriving a profit from the enterprise. It is therefore obvious that the final result which was expected to be achieved from the work of distribution which Engebrecht was to perform was the sale to him by appellant of the largest possible number of its newspapers. More than this, appellant was also interested in receiving payment for the papers which it delivered to Engebrecht. The provision now being considered, whose object is apparently the furnishing of some sort of security to appellant for the merchandise which it might deliver to him in any one month, therefore relates solely to the final object of the contract.

The provision which requires Engebrecht to turn over to appellant all subscription payments covering more than 31 days made to him by subscribers who might make such payments in advance also relates solely to the matter of securing payment for the product which appellant was manufacturing. In this connection the business in which appellant is engaged must be borne in mind. It is the publisher of a newspaper and is interested in the sale of its product not merely from day to day but over a long period of time. It must also be remembered that the contract expressly provides for the termination of the contract. If Engebrecht should collect some considerable amount of money in subscription payments for appellant's paper from subscribers who should elect to pay for several months or, conceivably,

for years in advance and Engebrecht's relationship with appellant should be terminated prior to the expiration of the time covered by such payments, appellant's business might be seriously handicapped if such advance payments had not been turned over to it. Subscribers who had made such advance payments would be entitled to receive delivery of newspapers by carrier and appellant would be obligated to make such delivery without perhaps receiving any compensation for its product.

The provision which prohibits Engebrecht from selling, assigning, or transferring any part of the route or any interest in the contract or from selling newspapers to newsboys or carriers in the city of Fresno or from delivering newspapers to anyone residing outside the territory covered by the route is not a provision which is indicative of that completeness of control which has been established as the final test of a relationship of the character which is being here considered. That part of the provision which circumscribes Engebrecht's activities to the territory covered by the route is perhaps superfluous since the subject of the agreement is a newspaper route which is located within designated territorial boundaries. The prohibitory language, therefore, does no more than to emphasize the fact that the route which is described in the contract is the sole subject of the agreement. It has no bearing on or connection with the details of the work or the manner of performance. The first part of the provision likewise has no bearing on details or manner of performance. It has no bearing on the right of control and does not in the slightest degree indicate that the relationship created between the parties was intended to be that of master and servant. Appellant was making an agreement to lease a certain specified route to a designated individual and to sell its product in bulk to this person. It had a right to prohibit this individual from transferring any part of the route to another person without thereby becoming subject to the legal liabilities which appertain to an employer. One who enters into an agreement with another who is concededly an independent contractor has the right to insist that the person with whom he makes the agreement shall himself do the work contemplated by the contract. This does not at all evidence an interest in the details of the work or the manner of its performance. It does indicate a natural de-

sire that the person with whom the contract for performance is made shall himself perform. It may have a tendency to show that personal performance is contemplated. It has, however, no tendency to show an interest in details or an expectation of directing the execution of the details.

The provision which permits Engebrecht to surrender the route on two weeks' notice is unimportant as an evidentiary factor in the problem under discussion. If it has any importance it is indicative of a freedom of action which is entirely inconsistent with the status of an employee or servant. It serves to emphasize the flexibility of the contract and has no bearing on details of work or manner of performance. It precludes the necessity of Engebrecht's giving any reason for terminating the contract and expressly reserves to him the right of termination on the single condition that he shall give the required notice.

The provision which requires Engebrecht to use his best efforts to increase the circulation of appellant's newspaper on the route has a direct bearing solely on the result which is expected from Engebrecht's performance of the work. It has nothing to do with manner of performance or with details. It relates wholly and expressly to the final result which is increased circulation with its natural concomitant of greater profit to the producer.

The provision whereby appellant reserved to itself the right to discharge Engebrecht is one upon which respondent places particular reliance as evidence bearing directly on the important feature of right of control. It must be conceded that generally an express reservation of the right of discharge is indicative of that right of control which is a recognized test by which to measure a relationship between individuals for the purpose of determining whether or not such relationship is that of master and servant. The importance of the right of discharge as a significant circumstance in arriving at a proper determination of the true character of the relationship is emphasized in the following decisions: *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 417 [156 Pac. 491, Ann. Cas. 1917E, 390]; *Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114, 119 [210 Pac. 820]; *May* v. *Farrell,* 94 Cal. App. 703, 711 [271 Pac. 789]; *Chapman* v. *Edwards,* 133 Cal. App. 72, 79 [24 Pac. (2d)

211]; *Hollingsworth* v. *Pemberton,* 138 Cal. App. 261, 264 [31 Pac. (2d) 1063].

However, in this connection, it must be borne in mind, as heretofore observed, that the control which is recognized as the test of the relationship means unqualified control, complete control, and that, in the very nature of things, a person who is beneficially interested in work which another is performing for him is permitted to exercise some measure of control without incurring the responsibilities or acquiring the immunities of a master, with respect to the person controlled.

Having in mind the necessity that the control shall be a complete or unqualified control we may proceed to examine and analyze the provision of the agreement whereby appellant reserved to itself the right to discharge Engebrecht. The language is that appellant "reserves the right to take over and assume charge and management of the route abovementioned at any time, in event that the management of the said route or the services performed by the said contractor shall fail to prove satisfactory to the company". From the above-quoted language it is apparent that the right of discharge which appellant thereby reserved is modified by the qualification that it could be exercised only in the event that Engebrecht's services or his management of the route should prove unsatisfactory to appellant. While it is true that appellant thereby established itself as the sole arbiter of Engebrecht's performance of the work it is also apparent that the right of discharge is not a right of arbitrary discharge. Appellant would not be entitled, under the wording of the provision, to discharge Engebrecht capriciously. It could terminate the relationship only in the event that it should determine that Engebrecht's services or his management of the route should prove unsatisfactory. Quality of workmanship is usually reflected in the final result which is attained and one who is interested solely in the result may justifiably retain some interest in the character of work by which the result is finally consummated. The right of discharge is not conclusive evidence negativing independence of the person performing work for another. (*Peters* v. *California Building-Loan Assn.,* 116 Cal. App. 143, 153 [2 Pac. (2d) 439].)

Appellant places much reliance on the decision in *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 216 Cal. 351 [14

Pac. (2d) 306], as authority in support of its contention that Engebrecht occupied the status of an independent contractor rather than that of an employee at the time the accident occurred. It must be conceded that there is much reason for appellant's reliance thereon. In many respects the situation there presented is factually similar to that which here appears. In the cited case a newspaper route was being operated by one Throndson under a lease thereof executed by a Mrs. Paulsen who had secured the same from her husband who in turn had secured it from a third person. By the terms of the lease contract Throndson paid a stipulated monthly rental to the route owner and was entitled to retain all the profits of the business which consisted of the difference between the price which he paid for certain newspapers and the price for which he sold them. The term of the lease was five years and it was provided that after one year either party might terminate the same on 60 days' notice to the other party. It was further specified in the lease agreement that if it should appear to the lessor or to the Examiner Printing Company, publisher of the newspapers that were distributed on the route, that the lessee was guilty of any breach of the terms of the lease, the lessor had the right to terminate the lease. The printing company was not a party to the lease and its provisions had no bearing on the relationship which existed between the lessee, Throndson, and the company. The lessee was, however, bound by the terms of the assignment of the lease to Mrs. Paulsen to which the printing company was a party. It appeared that Throndson was not compensated in any way by the printing company and that he derived his profit solely from resale of the newspapers which he purchased outright from the company. It also appeared that the control exercised by the printing company over Throndson included prompt and regular distribution of the paper to subscribers residing within the boundaries of the route, a thorough canvass of such residents as prospective subscribers, prompt adjustment of all complaints by subscribers, and compliance with all the rules and regulations of the publisher respecting the conduct of its business and that of its carriers. The principal question involved in the proceeding was the relationship which existed between Throndson and the printing company. It was held that Throndson was an independent

contractor and not an employee of the company. In arriving at this conclusion the Supreme Court pointed out that the purpose of the regulations prescribed by the company was to insure the definite result of prompt and regular distribution of its publication to subscribers, that the means by which the aforesaid result was to be accomplished was left entirely to the route owner and that so long as he produced the desired result the company did not interfere with the manner whereby the result was accomplished. It was observed that the carrier might make personal deliveries of papers or that he might employ others to act for him and that he might use any manner of conveyance in his work or that he might make deliveries on foot. It was declared that the limited control exercised by the printing company over Throndson, together with the fact that the company paid him no compensation but simply sold him papers which he then resold, impelled the conclusion that the relation which Throndson bore to the printing company was that of an independent contractor rather than that of an employee.

Respondent endeavors to avoid the effect of the decision in the last-mentioned case by pointing out certain differences in the factual background presented in the instant case. It is first observed that the Examiner Publishing Company in the cited case was not a party to the lease, whereas, in the instant proceeding appellant was the lessor and Engebrecht was the lessee of the route. However, it clearly appears from the language at page 353 of the cited decision that the Publishing Company gave its written consent to the various transfers of the route whereby the lessor, Mrs. Paulsen, acquired whatever rights she had in the newspaper route and that while the company was not a party to the lease from Mrs. Paulsen to Throndson it was fully informed as to the nature of said lease, its circulating manager having witnessed the execution of the same, and thereafter recognized Throndson and dealt with him as lessee of said route and the person who was entitled to conduct and operate the same from the date of the lease until the date of the occurrence of the accident in which Throndson's employee who sought and obtained compensation was injured. This point of differentiation is therefore relatively unimportant and does not lessen the effect of the decision in its bearing on the relationship between appellant and Engebrecht in the instant case.

It is next noted that, in the present proceeding, appellant agreed to pay to Engebrecht the sum of $115 to cover cost of distribution and further agreed to pay him a part of the subscription price of papers which Engebrecht should deliver to subscribers, whereas, in the cited case, Throndson agreed to pay Mrs. Paulsen $20 per month as rental under the lease and was then entitled to retain all the profits of the business. It is, however, apparent that Engebrecht, like Throndson, was entitled to retain all the profits of the business which in both cases would amount to the difference between the price paid to the publishing company for newspapers in bulk and the total amount received from individual subscribers along the route. It is true that in the cited case Throndson paid to his lessor a stipulated monthly rental, whereas, in the instant case, Engebrecht did not agree to pay any rental but on the contrary was entitled to receive the sum of $115. In this connection, it must be conceded that, in the instant case, although the second paragraph of the contract states that appellant "leases . . . the automobile route" the contract is entitled "Automobile Route Carrier's Contract" and the language of the entire agreement shows that it is not a contract of lease but a contract for the distribution of appellant's publication within a certain specified territory. The fact that Engebrecht did not agree to pay any rental for the privilege of operating as a distributor in the territory is of no importance as a circumstance of differentiation. It is obvious that appellant desired that Engebrecht should undertake the work of distribution and that Engebrecht was willing to perform the work not for a stipulated wage or recompense but for the profit which he could derive in the manner above indicated.

Respondent especially relies on the circumstance that, in the present proceeding, the contract provides for payment of compensation in the amount of $115 as a fact which distinguishes the instant case from the cited authority. It is argued that the provision for compensation is evidence which indicates that the relationship between appellant and Engebrecht was that of employer and employee. It may be conceded that ordinarily an agreement for the payment of compensation for the performance of work is indicative of an employer-employee relationship. This is particularly true when the recompense is made expressly proportionate

to the amount of labor involved. (*Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 119 [210 Pac. 820].) If, however, the compensation amounts to a specified recompense for a designated result it may not be contended with hope of success that it is indicative of a relationship of employment.

The provision for payment of compensation in the present case states that "It is mutually agreed and understood that the contractor shall furnish automobile service in the territory heretofore assigned to him and that the company agrees to allow the contractor in full and complete remuneration for the services of said automobile the flat sum of $115.00 for' the use of his car to cover said route." It is apparent, therefore, not only from the caption of the contract but also from the language of the instrument, that the agreement contemplated that an automobile should be used by Engebrecht in the work of distributing appellant's publication over the specified route. It is also clear from the above-quoted language that the sum of $115 was allowed exclusively for the use of an automobile and that it was not intended to be paid by way of compensation for Engebrecht's services or work as a carrier or distributor of appellant's publication. In this connection, it must also be borne in mind that the contract between the parties is not for any specified period of time. So far as appears the agreement might continue in existence for a period of years or it might be terminated by either party within a period of a few months or even weeks. In any event, whatever length of time the contract might continue in existence the sum of $115 is a flat allowance and the entire allowance granted to Engebrecht for the use of the particular kind of conveyance which, under the contract, he was obliged to use in the work of distribution and it has no relation whatever to the work or the time spent in performance of the work. This particular provision is not therefore important as a distinguishing fact which might lead to a different result than that declared in the cited authority.

It is also urged that the conceded fact that the contract in the instant case requires the distributor to use an automobile is a fact which distinguishes this case from the cited authority in which it is expressly noted that the carrier might use any manner of conveyance or might even make

deliveries on foot. The distinguishing feature which is thus specified is entirely unimportant in the view which we take of the contract in this case. As above noted, the contract here is entitled "Automobile Route Carrier's Contract". The newspaper route which forms the subject of the agreement is therefore definitely limited by the qualifying and descriptive word "Automobile". The parties were therefore contracting with respect to a particular kind of route, one which contemplated and expressly required the use of a certain type of conveyance having in mind one of the principal results to be achieved which was expeditious and early delivery of appellant's publication. Appellant certainly had the right to insist upon the use of this now ordinary mode of transportation to insure prompt distribution of its product. Under the peculiar circumstances of the instant case it is not at all indicative of a reserved right to control the details of the work or the manner in which they should be accomplished.

It is our conclusion, therefore, that the various distinguishing features relied on by respondent are not sufficient to produce a different result from that which was attained in the case cited and that the reasoning of the court in *State Compensation Ins. Fund* v. *Industrial Acc. Com.*, 216 Cal. 351 [14 Pac. (2d) 306], is directly applicable to the situation which here obtains and the case is decisive of the problem here presented.

Another recent decision of the Supreme Court which is factually similar to the instant proceeding is the case of *State Compensation Ins. Fund* v. *Industrial Acc. Com.*, 2 Cal. (2d) 94 [39 Pac. (2d) 201]. This was a proceeding in *certiorari* wherein the insurance carrier of the Examiner Printing Company sought to annul an award of the Industrial Accident Commission granting compensation for the death of one Bohm. It appeared that five months prior to his death Bohm had purchased from a third party an agency for delivery of "The San Francisco Examiner" in a designated territory. No written contract had been executed between deceased and the printing company. The deceased, however, gave a bond to the printing company for the purpose of guaranteeing payment of the wholesale price of newspapers delivered to him. The undertaking provided that the deceased should pay a flat price for papers which

he received and which were then delivered by him to newsboys employed by him and to stores, news-stands and other persons and firms in the territory with whom he had established contact. In addition to the above-described arrangement; the printing company made a separate contract with the deceased whereby the company employed him to deliver a certain number of copies of the Sunday edition of its newspaper to another agent in South San Francisco, outside the territory served by deceased. The accident which resulted in Bohm's death occurred while he was returning from San Francisco with a load of papers but before he had arrived at the place where he was to deliver a portion of such papers to the other agent. The accident commission found that, at the time Bohm sustained the injuries which caused his death, he was employed by the printing company and was engaged in the course of his employment. The Supreme Court denied the insurance carrier's application for the writ without opinion, but on petition for rehearing rendered the following opinion: "The petition for rehearing herein is denied, for the reason that the deceased employee, at the time of his death, was performing duties arising out of a special employment; and that such special employment was distinct from his ordinary activities, *in which he was an independent contractor.*" (Italics ours.)

In giving consideration to the matter of the relationship which existed between appellant and Engebrecht it has been assumed, as heretofore stated, that Daniel Calvin Smith was an employee of Engebrecht at the time the accident in which respondent was injured occurred. Examination of the record herein fully warrants the assumption thus made and also justifies the conclusion that the trial court's finding that Smith was the servant and employee of appellant can be sustained only in the event that it can be declared that the relationship which Engebrecht bore to appellant was that of an employee. If the evidence shows that Engebrecht was an independent contractor no liability for compensatory damages may properly be fastened upon appellant for the negligence of Engebrecht's employee. As heretofore indicated, it is our conclusion that there is no evidence in the record which supports the finding that Smith was appellant's employee at the time of the accident.

■ The appeal of Engebrecht may be disposed of in short order. Examination of the record impels the conclusion that the trial court's finding that Daniel Calvin Smith was guilty of negligence in the operation of the automobile which he was driving at the time the accident occurred, in which respondent was injured, and that Smith's negligence was the proximate cause of respondent's injuries and property damage is not lacking in evidentiary support. Since this is true and it is also true, as above noted, that the evidence showed that Smith was Engebrecht's employee at the time of the collision and was then acting in the scope of his employment, it follows that the judgment against Engebrecht is proper.

■ Some contention is made that the damages awarded to respondent are excessive. The evidence respecting respondent's personal injuries which was produced was sufficient, in our opinion, to justify the award. Under these circumstances it may not be successfully maintained that the amount awarded by the judgment is so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion, prejudice or corruption.

The judgment as to appellant George Engebrecht is therefore affirmed. For the reasons stated, the judgment as to appellant James McClatchy Publishing Company is reversed.

Marks, Acting P. J., concurred.

Barnard, J., being absent, did not participate herein.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 19, 1936.