Opinion
 

 REYNOSO, J.
 

 Appellant Max Grant appeals from a judgment .of the trial court upholding an Unemployment Insurance Appeals Board determination that Grant was an employer of newspaper carriers, therefore within the contemplation of the California Unemployment Insurance Code. As such he was not entitled to a refund of contributions, penalties and interest paid under protest on behalf of the employees into the Unemployment Insurance Fund. Grant asserts two propositions: (1) That the disputed individuals involved were independent contractors rather than employees, and (2) even if they were employees, he was nevertheless exempt from unemployment insurance contributions under Unemployment Insurance Code section 649, subdivision (b). On appeal, the findings of the trier of fact will not be disturbed if supported by substantial evidence in the record. Accordingly, the question is whether
 
 *650
 
 or not there is substantial evidence to support the agency’s and trial court’s findings of a non exempt employment relationship. We find there is.
 

 I
 

 Facts
 

 During the period in question, Grant was doing business in California with the exclusive right to distribute the Los Angeles Times in a specified geographical area. He used carriers to make delivery. All were over the age of 18 and.most held other full-time jobs.
 

 When an individual became a carrier, he and Grant signed a written agreement prepared by Grant stating the carrier was an independent contractor. Among other matters, the carriers were provided the “option” of designating Grant collector of subscription dues and bearer of the risk of loss. All of the carriers in question so elected.
 

 Grant set the carrier’s “purchase price” for the newspaper based on the area and density of, and his own prior experience with, the carrier’s particular route. The price varied with each route. The carrier was never allowed to collect money as part of his compensation. Instead, he received from Grant a check for his “profit”—the difference between the retail price of the papers and his “purchase price.”
 

 The carriers picked up the papers at Grant’s garage where he provided folding machines for their use. They were required to deliver the papers before 6:15 a.m. on weekdays and before 6:30 a.m. on Sunday. They were also required to maintain a list of the subscribers on their route; the list remained Grant’s property however, and the carriers were required to surrender it and refrain from using it further at such times as they left the job.
 

 Grant placed a listing in the telephone book as the local distributor of the Los Angeles Times. Subscriber complaints commonly came directly to him and he personally responded. Only later did he notify the carrier. Excessive complaints warranted a carrier’s termination, though in fact, this never occurred.
 

 The carriers did no soliciting, save occasionally leaving free samples at nonsubscribing homes at Grant’s instructions and expense. They were
 
 *651
 
 simply directed by Grant to start or stop delivering to a particular address.
 

 Grant was assessed for unemployment insurance contributions for the period October 1, 1968, through June 30, 1970, and his claim for a refund was granted by a referee of the appeals board. The referee’s decision was reversed by the board.
 

 Grant was subsequently assessed for the period July 1, 1970, through June 30, 1972, and his request for reassessment was denied, based upon the prior decision of the board. Grant’s appeal of this decision was denied. He then brought this action to recover the contributions.
 
 [1]
 

 II
 

 Scope of Review
 

 The Director of Benefit Payments contends that he is entitled to a summary affirmance since Grant failed to request findings of fact and in such a situation the rule is that it may be presumed that the lower court found all facts necessary to support the judgment. That rule contemplates situations in which the reviewing court lacks a record. Here, however, the transcripts of the case are before the court. As such, the court, while presuming that the trial court found all facts necessary to support the judgment, will independently review the evidence to determine whether it supports the implied findings.
 
 (Mears
 
 v.
 
 Mears
 
 (1960) 180 Cal.App.2d 484, 497-498 [4 Cal.Rptr. 618];
 
 Childers
 
 v.
 
 Childers
 
 (1946) 74 Cal.App.2d 56, 59 [168 P.2d 218].)
 

 Grant contends he is entitled to reversal as a matter of law because the trial court’s conclusion was contrary to prior Court of Appeal decisions which he contends involved virtually identical factual situations.
 
 (Isenberg
 
 v.
 
 California Emp. Stab. Com.
 
 (1947) 30 Cal.2d 34, 41 [180 P.2d 11].) To support his contention he points to
 
 Batt
 
 v.
 
 San Diego Sun Pub. Co., Ltd.
 
 (1937) 21 Cal.App.2d 429 [69 P.2d 216], and
 
 Bohanon
 
 v.
 
 James McClatchy Pub. Co.
 
 (1936) 16 Cal.App.2d 188 [60 P.2d 510], cases in which newspaper carriers were held to be independent contractors. His authority is misplaced; the facts of
 
 Batt
 
 and
 
 Bohanon
 
 are not substantial
 
 *652
 
 ly identical to the facts in this case. They were both tort actions in which the carriers themselves purchased the papers, made the collections, and bore the risk of loss. Other cases involving newspaper carriers under similar but not identical facts have held the carriers to be employees and not independent contractors.
 
 (Cal. Emp. Com.
 
 v.
 
 L. A. etc. News Corp.
 
 (1944) 24 Cal.2d 421 [150 P.2d 186];
 
 California Employment Com.
 
 v.
 
 Bates
 
 (1944) 24 Cal.2d 432 [150 P.2d 192].)
 

 We are left with the general rule that where the issue is whether a person is an employee or independent contractor for purposes of the Unemployment Insurance Act, the question is a mixed one of law and fact to be determined by the trier of fact. The finding will not be disturbed on appeal where it is supported by substantial evidence.
 
 (Schaller
 
 v.
 
 Industrial Acc. Com.
 
 (1938) 11 Cal.2d 46, 50 [77 P.2d 836];
 
 Mantonya
 
 v.
 
 Bratlie
 
 (1948) 33 Cal.2d 120, 128 [199 P.2d 677];
 
 Bates
 
 v.
 
 Industrial Acc. Com.
 
 (1958) 156 Cal.App.2d 713, 717 [320 P.2d 167].)
 

 Ill
 

 Employment Relationship
 

 Unemployment Insurance Code sections 601, 675, and 976 require employers to contribute to the Unemployment Insurance Fund; independent contractors are not required to contribute.
 
 (Empire Star Mines Co.
 
 v.
 
 Cal. Emp. Com.
 
 (1946) 28 Cal.2d 33, 43 [168 P.2d 686];
 
 Tomlin
 
 v.
 
 California Emp. Com.
 
 (1947) 30 Cal.2d 118 [180 P.2d 342].) The factors to be considered in determining whether or not the employment relationship exists are contained in section 220 of the Restatement Second of Agency.
 
 (Tieberg
 
 v.
 
 Unemployment Ins. App. Bd.
 
 (1970) 2 Cal.3d 943, 950 [88 Cal.Rptr. 175, 471 P.2d 975].)
 
 [2]
 

 
 *653
 
 The primary factor to be considered is where the right of control lies within the relationship.
 
 (Ibid.; Isenberg
 
 v.
 
 California Emp. Stab. Com., supra,
 
 30 Cal.2d, at p. 39;
 
 Empire Star Mines Co.
 
 v.
 
 Cal. Emp. Com., supra,
 
 28 Cal.2d 33, at p. 43.) Written agreements are of probative significance, although terminology is not conclusive and the court may look behind them.
 
 (Tieberg
 
 v.
 
 Unemployment Ins. Acc. Bd., supra, 2
 
 Cal.3d at p. 952;
 
 Mark Hopkins Inc.
 
 v.
 
 Cal. Emp. etc. Com.
 
 (1948) 86 Cal.App.2d 15, 18 [193 P.2d 792].) If an employment relationship exists, the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved does not change the character of the relationship, particularly where the employer has general supervision and control.
 
 (May
 
 v.
 
 Farrell
 
 (1928) 94 Cal.App. 703, 710 [271 P. 789];
 
 Greenaway
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1969) 269 Cal.App.2d 49, 54-55 [74 Cal.Rptr. 452].)
 

 Newspaper delivery is not a highly skilled operation requiring close scrutiny and control by the employer; a certain amount of employee freedom is inherent in the work. We find ample evidence to support the conclusion that Grant had the right to control the carriers. He required the papers to be delivered only to particular subscribers and at a specified time, handled the complaints, advised the carriers on methods of operation, required subscriber lists to be maintained by the carriers (though they had no property rights in them), and retained the right to terminate carriers.
 

 Moreover, the carriers were not involved in a separate and distinct occupation of their own. To the contrary, they were essential to Grant’s business. Many were employed for lengthy periods of time, some for a number of years. Additionally, Grant varied the wholesale “purchase price” of the papers depending upon the distance the carriers were required to travel. In this sense, he paid for their transportation costs.
 

 We have already noted that Grant personally made all collections and bore the risk of loss in all cases. In practical effect the carriers were paid for their delivery service whether or not Grant’s customers paid their bills to him. The trial court was justified in concluding that the carriers did not purchase papers from Grant for independent resale, but were hired by him to deliver the newspapers under an employer-employee relationship.
 

 Grant argues the parties believed the carriers were independent contractors, and he so testified. Several of the employees testified
 
 *654
 
 similarly, though it may be noted they were subject to dismissal without cause by Grant. However, even taking the testimony of all the witnesses at face value, the belief of the parties as to the legal effect of their relationship is not controlling if as a matter of law a different relationship exists. Whether or not the belief existed, the trial court properly determined the carriers were employees rather than independent contractors. Grant cannot, in effect, require his employees to waive their rights under the Unemployment Insurance Code and absolve himself of obligations under the code by requiring his employees to sign a document which states that they will act as independent contractors.
 

 We find substantial evidence of an employment relationship. Clear evidence is needed to defeat the beneficent purposes of the legislature established in the code. Upon this record the trial court did not err.
 

 Grant also argues that he is exempt from the contribution requirement under Unemployment Insurance Code section 649, subdivision (b). That section reads in part: “ ‘Employment’ does not include service performed by an individual if:
 

 “(b) . .. the newspapers . .. are to be sold by him . . ..” In light of the foregoing analysis, we need merely say that the section does not apply here, because the newspapers were sold by Grant and delivered by others under his control.
 

 The decision of the trial court is affirmed.
 

 Regan, Acting P. J., and Paras, J., concurred.
 

 [1]
 

 This action involves only the second assessment, from July 1, 1970, through June 30, 1972, the first assessment having become final without a suit for refund being filed. The first assessment is only important here in that the testimony from the hearing on that matter was entered by stipulation in the present action, and was the basis for the court’s decision.
 

 [2]
 

 The factors included,in section 220 of the Restatement Second of Agency to be considered are:
 

 “(a) The extent of control which, by agreement, the master may exercise over the details of the work;
 

 “(b) whether or not the one employed is engaged in a distinct occupation or business;
 

 “(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
 

 “(d) the skill required in the particular occupation;
 

 “(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
 

 “(f) the length of time for which the person is employed;
 

 “(g) the method of payment, whether by the time or by the job;
 

 “(h) whether or not the work is a part of the regular business of the employer;
 

 “(i) whether or not the parties believe they are creating the relation of master and servant; and
 

 “(j) whether the principal is or is not in business.”