[Civ. No. 10949. Second Appellate District, Division Two.—August 10, 1936.]

HARRY S. BROSIUS, Respondent, v. ORPHEUM THEATER COMPANY, LTD. (a Corporation), et al., Defendants; BROADWAY THEATERS, INC. (a Corporation), Appellant.

Lasher B. Gallagher for Appellant.

Kenneth J. Murphy, as *Amicus Curiae* on Behalf of Appellant.

William J. McNichols and Raymond G. La Noue for Respondent.

WOOD, J.—Broadway Theaters, Inc., hereinafter referred to as defendant, appeals from a judgment recovered by plaintiff for damages sustained when he fell in the Orpheum theater while performing a "comedy cycling act" which was one of a number of vaudeville acts on the program. Pursuant to a written contract plaintiff and his partner took part in a number of performances. At the conclusion of each performance plaintiff descended from a high bicycle wheel a distance of about fourteen feet. Before the first performance the man in charge of the theater apparatus to be used in the performance, known as the "fly-man", with plaintiff's assistance, tied a rope to a batten in the theater. This rope was to be used by plaintiff in descending at the termination of the performance. There were a large number of battens in the theater and defendant's fly-man selected the batten to be used. During the first performance plaintiff heard noises caused by the scraping of some of the battens, which were being moved up and down. He complained to the fly-man, who had had much experience in matters of the kind. The fly-man replied that he would examine the battens and rope and ascertain if it were safe to continue their use. Later the fly-man informed plaintiff that it was safe to use the apparatus. When plaintiff made a second complaint about the noise he was told that a counter weight had been employed. The fly-man said to him: "Now, all right, everything is O. K." At the conclusion of the sixth performance plaintiff attempted to descend by the rope but the rubbing of the battens had weakened the rope to such an extent that it broke and plaintiff fell. The judgment was given for the injuries thereby occasioned.

The trial was before the court without a jury. The court made a personal inspection of the premises and upon the conclusion of the trial found that defendant was guilty of negligence and that plaintiff was free from contributory negligence. These findings are now attacked. Defendant owed to plaintiff the duty of using reasonable care in selecting and maintaining safe apparatus for his use. The question whether defendant discharged this duty was for the

determination of the trial court. There is sufficient evidence in the record to sustain the findings of the court on the issues of negligence and contributory negligence.

Defendant interposed the defense that plaintiff was an employee of defendant as that term is defined in section 8 of the Workmen's Compensation Act and that plaintiff's sole means of redress was by application to the Industrial Accident Commission. The written contract under which the performances were conducted provided in part as follows:

"That in consideration of the mutual promises and covenants herein contained, and the further consideration of one dollar, each to the other in hand paid, the receipt whereof is hereby acknowledged, it is Agreed by and between the said Manager and said Artiste, as follows:

"First: (a) Said Manager does hereby engage and employ the exclusive services of said Artiste in . . . or their specialty, or act, entitled comedy cycling act for a period of 7 days, commencing Dec. 5, 1934, said services to be rendered according to the following schedule: City Los Angeles Calif. Week of Wednesday Dec. 5, 1934 Theater (1 week) Orpheum. And for the usual number of performances in said respective theaters as in accordance with the law; but said Manager may alter the aforesaid route for the aforesaid time of said engagement providing said alteration does not interfere with contracts already entered into by said Artiste and that said Manager shall pay the difference in transportation, including fares and baggage that such alteration may entail; or for a period of 7 days . . . commencing 5th day of Dec. 1934.

"(b) Said Manager shall pay for the services of said Artiste a salary of $206.25 at the close of his engagement, but should said Artiste be absent from any of performances for which he has contracted to appear, through any fault of his own, or because of sickness or accident, said Manager may deduct from his said salary an amount in proportion that the number of performances lost is to the total number of performances of said week.

"(c) Said Manager may cancel this engagement or any part thereof because of the inebriety or the suggestive act or work of said Artiste in the aforesaid theaters if Artiste refuses to eliminate same when notified by Manager.

"(d) Said Manager shall not pay for any services not rendered by said Artiste by reason of any of the said theaters being closed through fire, by public authority, or for any reason that said Manager is or are not responsible for.

"Second. (a) Said Artiste do hereby agree to be engaged and employed by the said Manager and to present the act or specialty of himself and M...... in his or their usual and customary manner for the number of performances daily, and at the theaters and cities, and at the times hereinbefore mentioned, and for such days as the same may be legally given, and for the aforesaid compensation, and in accordance with the terms herein provided.

"(b) Said Artiste further agrees that he or they will not appear or present his act or specialty in any city in which he or they is engaged to play by virtue of this contract within 6 months of the time of his engagement in each city, except in cities whose population is more than seventy-five thousand and in these cities he will not appear or present his or their act or specialty within any theater within a mile of the theaters in which the said services are to be performed by virtue of this contract for a period of 3 months prior to time of said engagement.

"(c) Said Artiste agrees to abide by all reasonable rules and regulations prescribed by the said Manager and of which the said Artiste received written notice for the conduct of the business of any or all theaters that said Artiste may play in by virtue of this contract.

"(d) Said Artiste shall send ...... or their usual billing matter, including photos, fourteen days before the beginning of said engagement, and ...... failure to do so shall be a cause for said Manager cancelling said agreement, providing said Manager immediately notifies said Artiste in writing of said cancellation.

"Said Artiste agree to be present for rehearsals at the usual time for the holding of rehearsals at the aforesaid respective theaters.

"(e) Should Artiste cancel said engagements or any part thereof, said Artiste agree to pay as liquidated damages to said Manager a sum equal to each week's salary of the period of said cancellation, together with such reasonable expenses as has been necessarily expended by said Manager in pro-

viding a substitute attraction for the aforesaid period of cancellation.

"(f) On two weeks notice in writing by either party this contract may be canceled without any liability thereunder.

. . . . . . . . . . . . .

"(h) Upon request of the Manager, the Artiste agrees to perform five shows on Saturday, Sundays and Holidays, without additional compensation therefor."

In section 8 of the Workmen's Compensation Act an independent contractor is defined: "The term 'independent contractor' shall be taken to mean, for the purpose of this act; any person who renders services, other than manual labor, for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." Under the terms of the act any person rendering services to another, other than an independent contractor, is presumed to be an employee. In section 2009 of the Civil Code a servant is defined: "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master." "The word 'servant' is generally synonymous with the word 'employee'." (*Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721].)

No decision of a reviewing court has been called to our attention in which a contract similar to the one before us has been construed with reference to the contention of defendant. It has been held repeatedly that the "control" referred to in the statute is complete control. (*Western Indemnity Co.* v. *Pillsbury, supra; Moody* v. *Industrial Acc. Com.*, 204 Cal. 668 [269 Pac. 542, 60 A. L. R. 299]; *Flickenger* v. *Industrial Acc. Com.*, 181 Cal. 425 [184 Pac. 851, 19 A. L. R. 1150].) In the Western Indemnity Co. case it was held that one beneficially interested in another's work may exercise a certain measure of control for a definite and restricted purpose without incurring the responsibilities, or acquiring the immunities, of a master, with respect to the person controlled. In the Moody case a nurse whose wages and hours of employment were covered by an operating schedule was held to be an independent contractor and not an employee of the patient within the provisions of the Workmen's

Compensation Act for the reason that she was not under the orders of the patient with reference to the methods of treating him. It has been held that a person engaged in a business of teaming and grading who undertakes to furnish a railroad contractor, for an indefinite period, with teams and drivers for use on a specified work, at a stipulated aggregate sum per day for each team, wagon, and driver, is not an employee of the contractor, within the meaning of the Workmen's Compensation Act, notwithstanding he may drive one of his own teams. Distinction must be made between "authoritative control and mere suggestion as to detail or the necessary co-operation where the work furnished is part of a larger undertaking". (*Western Indemnity Co.* v. *Pillsbury, supra.*)

Defendant did not have complete control over plaintiff, who contracted to furnish a "specialty" in his customary manner. The act had been prepared and arranged by plaintiff. Defendant did not have the right to control the number or size of the wheels used or the speed or direction in which they were to be propelled. Defendant refers to certain provisions of the contract which are claimed to be indicative of complete control. The fact that plaintiff's compensation was designated "salary" is of little moment. In the Moody case, *supra,* the petitioner's compensation was designated "wages". The provision requiring plaintiff to be present at rehearsals does not establish complete control. Plaintiff's act being one of several, orderly conduct of the theater would require that all the acts be rehearsed together for the purpose of co-ordinating the entire performance and synchronizing the acts with the music of the orchestra and the work of the employees of the theater. The provisions obligating plaintiff to abide by "all reasonable rules and regulations" is a requirement which, in view of defendant's business, would naturally be imposed on independent contractors and employees alike. The fact that plaintiff agreed to abide by *reasonable rules only* indicates that he did not place himself under the complete control of defendant.

We conclude that the superior court had jurisdiction. The judgment is affirmed.

McComb, J., *pro tem.,* and Crail, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 27, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 8, 1936.