[Civ. No. 1018. Fifth Dist. Jan. 22, 1969.]

ROY F. GREENAWAY, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, COUNTY OF FRESNO et al., Respondents.

Roslyn Robbins Dienstein for Petitioner.

Everett A. Corten, Selma Mikels, Arthur C. Jones, Hanna & Brophy and F. A. Aycock for Respondents.

CONLEY, P. J.—This petition for writ of review tests the question whether or not an inheritance tax appraiser of the State of California, in case of injury in the course of his employment, is entitled to the benefits of the workmen's compensation law. Mr. Greenaway occupied the position of an inheritance tax appraiser theretofore duly appointed and functioning on behalf of the State Controller and in a matter arising in the Superior Court of Fresno County at the time he was injured in the course of his duties. The refusal on the part of the Workmen's Compensation Appeals Board to award him compensation for his injuries arose as a result of the appeals board's view of the law applicable to the situation and not because of any conflicting evidence as to facts. The legal position of Mr. Greenaway was completely deter-

mined by the applicable law and the admitted facts, and the present result in the record does not depend upon competing evidence but only upon a legal conclusion which, in our view, is wrong. We conclude Mr. Greenaway is entitled to the benefits of workmen's compensation law, and it is, therefore, our duty to annul the award against him and to send the case back for further consideration by the appeals board in accordance with this opinion.

The record shows that on September 10, 1959, the then duly elected and functioning State Controller was Alan Cranston; he appointed Roy F. Greenaway, on said date, as a state inheritance tax appraiser with duties in large part centering in the Superior Court of the County of Fresno. The petitioner was then sworn in by the County Clerk of Fresno County, and the Controller's office forwarded to him copies of various state codes covering inheritance and gift tax computations and a manual, which set forth in detail the exact manner and method of computing inheritance taxes and a description of what was involved and required in appraisal procedures. In our opinion, the work thus required of an inheritance tax appraiser is among the administrative activities of the employees of the state; it is employment of a highly trained and literate nature and, if properly done, insures not only the legitimate functioning of the state's business in an important field but also insures performance of the technical requirements of numerous organizations within the control of California.

All of the work that an inheritance tax appraiser is required to do is subject to audit by the State Controller. The appraiser is required to forward to the State Controller his reports, copies of work receipts and other documents, which are then audited. The State Controller responds to the state inheritance tax appraiser after the audit is completed, either by giving his permission to him to file the proposed report with the superior court or requiring him to make partial or complete corrections in the report that are necessary in order to comply with the law. Often an appraiser is required to rewrite the report or to submit a new report for audit. In addition, the inheritance and gift tax division of the State Controller's office requires information be submitted to it regarding appraisal in specific cases; for example, in cases of closely held corporations, documents which bear on the question involved may be requested of the appraiser to substantiate his

work. The work is highly technical and training programs for new inheritance tax appraisers are regularly conducted.

Inheritance tax appraisers are also required to be present at certain hearings and, legally, as presiding officers at the hearings where the total appraised value in question is in excess of a quarter of a million dollars. The appraiser must be available to the public and provide a service to the public in a calm and efficient manner.

Insofar as the superior court is concerned, the appraiser thus nominated by the State Controller is appointed to make specific appraisals of a tax due to the state.

In addition, there are determinations of taxes which do not pass through the superior court. An example of this is gift tax determination.

The petitioner and other appraisers also get compensation directly from the State of California, pursuant to section 14772 of the Revenue and Taxation Code. This compensation is earned by the tax appraiser for tax computation work as opposed to appraising as such. By law, and current custom, a maximum of $3,200 a year and a minimum of $400 a year may be paid for this work.

Inheritance tax appraisers may be removed by the State Controller as the Controller sees fit.

The inheritance tax appraiser also assists and works for the Controller in many other ways. From a practical standpoint, in addition to appraising estates in a probate matter and filing his reports, people consult him for information; he releases liens on property, including inheritance tax liens; he gathers information from the taxpayer from which to prepare his report; and the Controller occasionally requests statistical information from the appraisers. If the appraiser did not perform these functions he might not be on the panel. He could be discharged by the Controller. The Controller can require inheritance tax appraisers to maintain the type of offices which he (the Controller) wishes through his power to discharge the appraisers. The Controller can do anything he wants in his regulation of members of the panel. Where inheritance tax appraisers do not follow instructions they can be, and most of them have been removed.

The facts relative to Mr. Greenaway's injury were uncontradicted. On July 7, 1967. the date of the injury, the petitioner had left Sanger, California, where he was completing a review of real property in the estate of Gertrude W. Everett, Fresno County Superior Court Probate No. 41354. The spe-

cific item which petitioner was reviewing was real property located at Sanger, California. Petitioner had left that city and was going to Orange Cove.

In Orange Cove he was planning to see property in the estate of Nancy Kiagan, Fresno Superior Court Probate No. 40661. In the Kiagan matter, petitioner was reappraising real and miscellaneous property for the purposes of sale. Following this, it was petitioner's intention to return to Fresno via Kingsburg where he was going to view property in the conservatorship of Mary E. Spence, Fresno Superior Court Probate No. 40983. In all three instances, petitioner had been appointed by the Superior Court of Fresno County to make the appraisals, and he was required by the appointment to report to the Superior Court of the County of Fresno. In the matter of the Everett estate, petitioner was appraising for the purposes of the court and also for the State Controller to determine the inheritance tax due. In the Kiagan matter, petitioner was reappraising for the purpose of sale, as more than a year had elapsed since death and a reappraisal was needed in order to sell the property. In the conservatorship of Mary Spence, the petitioner was requested to report the value of the property to the court.

The rights and duties as among the parties here seem so clear that elementary definitions seem to require success on the part of the petitioner. Mr. Greenaway claims that both the State Controller and the County of Fresno are employers.

Section 3300 of the Labor Code defines the word "employer" as used in its appropriate connotation in part as follows:

"As used in this division, 'employer' means:

"(a) The State and every State agency.

"(b) Each county, city, district, and all public and quasi public corporations and public agencies therein."

Section 3351 of the Labor Code defines "employee" as follows:

"'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes:

". . . . . . . . . . .

"(b) All elected and appointed paid public officers."

Labor Code section 3352 names a number of specific persons who are excluded as employees within the meaning of the Labor Code. Inheritance tax appraisers are not excluded.

Labor Code section 3353 defines "independent contractor" as follows:

"'Independent contractor' means any person who renders service for a specific recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

This definition is included here because of the fact that the hearing officer seemed to think an inheritance tax appraiser is an independent contractor.

It appears to us that the petitioner was not an independent contractor but one who worked as an employee for the state on the one hand and the Superior Court of Fresno County on the other.

In his work for the superior court and the judges there presiding in probate matters, it is well to keep in mind that the inheritance tax appraiser had duties as an employee designated by the judicial officers who were carrying on necessary state and county duties. It is correctly said in *Sacramento etc. Drainage Dist.* v. *Superior Court,* 196 Cal. 414, 432 [238 P. 687]:

"The superior courts of the state of California, while located and functioning in the several counties of the state, are not local or county courts, but constitute a system of state courts, being vested with and exercising the judicial power of the state under the express terms of section 1 of article VI of the state constitution. The jurisdiction of the system of state courts thus established is defined by section 5 of article VI of the constitution, and it is conceded by the petitioner herein that the constitutional jurisdiction and powers of the superior court as thus defined can in nowise be trenched upon, lessened or limited by the legislature."

It is a general principle that if only a single inference and but one conclusion may be drawn from the facts in evidence on the question whether one is an employee or an independent contractor the question is one of law. (*Baugh* v. *Rogers,* 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043]; *Perguica* v. *Industrial Acc. Com.,* 29 Cal.2d 857 [179 P.2d 812]; *Walder* v. *Industrial Acc. Com.,* 85 Cal.App.2d 473 [193 P.2d 60]; *Mantonya* v. *Bratlie,* 33 Cal.2d 120 [199 P.2d 677]; *Sparks* v. *L. D. Folsom Co.,* 217 Cal.App.2d 279 [31 Cal.Rptr. 640].)

It does not follow that because there is a certain amount of freedom inherent in the nature of the work one is

called upon to do that one becomes an independent contractor rather than an employee. (*Durae* v. *Industrial Acc. Com.*, 206 Cal.App.2d 691, 700 [23 Cal.Rptr. 902].)

Certain it is that whether a given workman is an independent contractor is an affirmative defense, and if it is to be sustained all elements thereof must be proved to establish the status of independent contractor as defined in section 3353 of the Labor Code. (*Durae* v. *Industrial Acc. Com., supra,* 206 Cal.App.2d 691, 698.)

In dealing with this branch of the law, it is the principal's right to exercise control, and not necessarily the exercise of that right, which determines whether the person performing the service is an employee or an independent contractor. (*Murray* v. *Industrial Acc. Com.*, 216 Cal. 340 [14 P.2d 301]; *New York Indem. Co.* v. *Industrial Acc. Com.*, 80 Cal.App. 713 [252 P. 775]; *MacMillan* v. *Montecito Country Club*, 65 F.Supp. 240; *Baugh* v. *Rogers, supra,* 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043]; *Garrison* v. *State of California,* 64 Cal.App.2d 820 [149 P.2d 711]; *California Emp. Com.* v. *Sutton,* 69 Cal.App.2d 181 [158 P.2d 949]; *Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33 [168 P.2d 686]; *Clarke* v. *Hernandez,* 79 Cal.App.2d 414 [179 P.2d 834]; *Tomlin* v. *California Emp. Com.*, 30 Cal.2d 118 [180 P.2d 342]; *Sparks* v. *L. D. Folsom Co., supra,* 217 Cal.App.2d 279.)

The very strongest evidence of an employer's control of his employee is his right to discharge him at will without cause. (*Housewright* v. *Pacific Far East Line, Inc.,* 229 Cal.App.2d 259, 266 [40 Cal.Rptr. 208].) And this right the State Controller unquestionably had; furthermore, the superior court could bar further work in a given estate if the law was not complied with by the appraiser in going about the performance of his duty.

It should be noted that, as in the present case, an employee may quit his work, "'but an independent contractor is legally obligated to complete his contract.'" (*Baugh* v. *Rogers, supra,* 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043].)

In *Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 P. 820], the employee worked for two people, a creamery and a publishing company. He was paid $6 a day by the creamery; he was given no directions or supervision except that the cream was to be back by 3:30 or 4 p.m. The publishing company paid him $15 per week, with no direc-

tions as to required time or specified route. He was subject to discharge at any time by both employers. At the time of his injury, he was driving his own vehicle, carrying empty milk cans and ice for the dairy, papers for the publishing company, and a battery for a garage along the route. The court ruled that the relationship to the publishing company was that of an employee and not independent contractor. The publishing company insisted it had no power of direction and control over the employee, which was essential to establish the status of employee. But the court stated at page 121:

"One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed. In the instant case, it is undisputed that Press Publishing Company had the power to hire and the power to discharge its carriers for unsatisfactory service, . . . This power of discharge made obligatory any instructions given, for it gave to the Press Publishing Company the power to require obedience to those instructions and insured their being carried out."

In *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 417 [156 P. 491, Ann.Cas. 1917E 390], the court quoted approvingly the following excerpt from Wood on Master and Servant, section 317: " 'The real test by which to determine whether a person is acting as the servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged by him for disobedience of orders or misconduct.' " (See also: *Department of Nat. Resources* v. *Industrial Acc. Com.,* 216 Cal. 434, 439 [14 P.2d 746].)

Any employee can choose wilfully and illegally to disregard the instructions of his employer, in which event the only recourse available to an employer in such a situation is to discharge the employee.

By virtue of his power to dismiss inheritance tax appraisers without prior notification or even the assignment of a reason, the State Controller has the authority to exercise complete control over the manner and means of accomplishing the result he desires—the uniform assessment and collection of inheritance and gift taxes throughout the State of California. "It is unquestionably well-settled that 'one of the best tests to determine whether the relation is that of an independent contractor or that of an employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference

between an independent contractor and a servant or agent. . . . It is not a question of interference, or non-interference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act itself or the failure to act. . . .' '' (*Globe Indemnity Co.* v. *Industrial Acc. Com.*, 208 Cal. 715, 718 [284 P. 661].) While the Controller does not always exercise his right to act, the power to act is complete. It is not the fact of actual interference and control, but the right to interfere that makes the difference between an independent contractor and an employee. ''Coincident with the right of control is the right of either the employer or the employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right of control.'' (*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 581-582 [250 P. 570].) (See also: *New York Indem. Co.* v. *Industrial Acc. Com.*, 80 Cal.App. 713, 715 [252 P. 785]; *San Bernardino County v. Industrial Acc. Com.*, 217 Cal. 618, 623 [20 P.2d 673]); *California Emp. Com.* v. *Los Angeles Down Town Shopping News Corp.*, 24 Cal.2d 421, 425 [150 P.2d 186], held that: ''In determining whether an individual is an employee or an independent contractor, the most important factor is the *right* to control the manner and means of accomplishing the result desired. If the employer has the power to exercise complete control, whether or not that potential control is exercised with respect to all details, an employer-employee relationship exists. (Cases cited.) And strong evidence of the employer's control is his right to discharge at will, without cause. (Cases cited.) ''

The State Controller had the right to direct what should be done and when and how petitioner should do it, backed up by the Controller's right to end petitioner's service whenever he saw fit to do so, without reason and without recourse.

██ ''The power of a person at will to terminate the service of one engaged to perform a task is a persuasive circumstance that the relationship was that of master and servant. . . . When a person performing work for another is subject to the orders, control, and direction of such other, and is liable to be discharged for disobedience, then he is not an independent contractor, but an employee.'' (*Yucaipa Farmers Coop. Assn.* v. *Industrial Acc. Com.*, 55 Cal.App.2d 234, 237 [130 P.2d 146].)

██ In *San Bernardino County* v. *Industrial Acc. Com.*,

*supra,* 217 Cal. 618, 623 [20 P.2d 673], the county appointed a person to act as deputy registrar of voters. Even though the deputy registrar was not required to work during any specific number of hours or on any particular days the court held that she was an employee of the county since her employment could have been terminated at any time without liability to either party.

The case of the *County of Los Angeles* v. *Industrial Acc. Com.,* 89 Cal.App. 736, 740 [265 P. 362], held that an inspector at a general election is an appointed, paid, public officer, and, as such, an employee of the county; the court said that the appointment was casual but was in the course of the business of the employer:

''The 'business' of petitioners includes the performance of the duties prescribed by law. Among these duties is that of conducting elections, providing for polling places, appointing election officials, etc.''

Here, petitioner's appointment was in the course of the business of the Controller, which included duties prescribed by law insuring uniform assessment of inheritance and gift taxes through control of appraisal practices and insuring uniformity in computations of inheritance and gift taxes.

The fact that some of the pay of the appraiser comes from litigants does not derogate against his position as an employee.

In the *City of Los Angeles* v. *Vaughn,* 55 Cal.2d 198, 201 [10 Cal.Rptr. 457, 358 P.2d 913], it was held that an official court reporter of the superior court was not an independent contractor when he prepared transcripts from notes taken during civil trials at the request of attorneys or other persons entitled by law to request the preparation of the transcript. There, compensation for the preparation of the transcripts was paid by the person asking for the transcript. The court held that the argument that the court has and will exercise only minimal control over reporters with reference to preparing and furnishing reporter's transcripts in civil cases is devoid of merit, saying:

''The superior court has absolute control over the reporter at all times through its power to discharge him at will.

''. . . The right to discharge an employee at will, without cause, is strong evidence of the employer's control.''

The Superior Court of the State of California in and for the County of Fresno has jurisdiction over probate matters depending on specific facts including residence of the deced-

ents involved in estate matters, and, consequently, the duly appointed inheritance tax appraisers in pending estates carry out and perform duties inherent in the required activities of Fresno County.

The applicant would not and could not have been assigned by the superior court to view the Everett land or the Kiagan property or the Spence property for the conservatorship, if he had not been an inheritance tax appraiser appointed by the State Controller. During all the time applicant was engaged in carrying out the duties involved in the Everett, Kiagan and Spence assignments, he was under the employment of the State Controller and could have been permanently removed by him at will. It appears to us that the petitioner clearly falls under the requirement of law that he be afforded the rights and privileges accorded to an employee under the workmen's compensation law. He was an employee of the State of California and served both the important machinery of the State Controller's office and the necessary functions of the Superior Court of the County of Fresno in the conduct of its necessary business. He is entitled to the benefits of the workmen's compensation law as an employee of each and both the State Controller and the Superior Court of the State of California in and for the County of Fresno; the said superior court is not a party to the proceedings and therefore is not now subject to an order holding it responsible; a majority of the justices of this court are unconvinced that the County of Fresno, as distinguished from the superior court, is an employer of the petitioner, and the court consequently holds that the petitioner is not entitled to recourse against said county.

The decision denying payment to the petitioner is annulled and the cause referred back to the Workmen's Compensation Appeals Board for a hearing and award not at variance, but in conformity, with the finding of this court as above set forth.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied February 19, 1969, and the opinion was modified to read as printed above.