[Civ. No. 53571. Second Dist., Div. Three. Apr. 26, 1979.]

PAUL ADCOCK, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

COUNSEL

Choate & Choate and Joseph Choate, Jr., for Plaintiff and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, and Richard M. Radosh, Deputy Attorney General, for Defendant and Respondent.

OPINION

**COBEY, J.**—Appellant, Paul Adcock, appeals from a judgment denying his petition for a writ of mandate to set aside the decision of the Board of Administration of the Public Employees' Retirement System (PERS) rejecting his application for service credit toward retirement based upon his years of service as an inheritance tax referee. The appeal lies. (Code Civ. Proc., §§ 904.1, subd. (a), 1094.5, subd. (f).)

Adcock contends that he is entitled to receive service credit in PERS for his service as an inheritance tax referee either pursuant to Government Code section 20012 because he was paid from funds directly controlled by the state or because inheritance tax referees perform "public service" within the meaning of Government Code section 20930, subdivision (f). We have examined each of these contentions and conclude that both are meritless. Consequently we will affirm the judgment.

FACTS

Adcock was employed by the State Controller as an inheritance and gift tax examiner from January 23, 1961, through June 28, 1968, and from July 21, 1975, until his retirement. He belonged to the PERS while he was so employed. (See Gov. Code, § 20014.)

After the State Controller appointed him as an inheritance tax referee (see Rev. & Tax. Code, § 14771), Adcock left his position as an examiner and served as a referee from July 1, 1968, through June 30, 1975. On December 17, 1975, Adcock applied to the PERS for service credit in the PERS for the period of his service as an inheritance tax referee—that is, from July 1, 1968, through June 30, 1975. PERS denied his application on the ground that Adcock was not an employee as defined by Government

Code section 20012, i.e., a person in the employ of the state whose compensation is paid out of funds directly controlled by the state.

While employed as a referee, Adcock earned "just under $30,000 per year." This income was earned in three different ways. He earned most of it from the appraisal of decedents' estates pursuant to appointment by the superior court under Probate Code section 605. The probate estates were the source of these appraisal fees. (Prob. Code, § 609.) He does not contend that this income was paid from funds directly controlled by the state.

Adcock also received approximately $8,000 compensation for the preparation of reports as to the amount of inheritance tax due with respect to estates in probate. (See Rev. & Tax. Code, § 14501.) The superior court fixed the amount of this compensation subject to approval by the State Controller and the treasurer of the county in which Adcock acted disbursed this compensation from state inheritance tax money it held. (See Rev. & Tax. Code, § 14774.)

During Adcock's service as a referee the State Controller designated him to perform between 10 and 50 gift tax appraisals pursuant to Revenue and Taxation Code section 16503. Adcock was paid for these appraisals by State of California warrants designated as "witness fees."

No deductions of any kind were made from the compensation that Adcock received as a referee by the state, the county or the superior court. Adcock paid premiums for his employee's workers' compensation coverage.

## DISCUSSION

### ADCOCK IS NOT ENTITLED TO CREDIT IN THE PERS FOR THE YEARS HE SERVED AS AN INHERITANCE TAX REFEREE

The Public Employees' Retirement Law (Gov. Code, § 20000 et seq.) provides that state employees, unless excluded, must participate in the retirement system. (See Gov. Code, §§ 20300, 20303 and 20330.) Government Code section 20012, subdivision (a), defines an employee as "[a]ny person in the employ of the state . . . whose compensation, or at least that portion of his compensation which is provided by the state . . . is paid out of funds directly controlled by the state . . . , excluding all other political

subdivisions, . . ." This section further explains that " '[f]unds directly controlled by the state' includes funds deposited in and disbursed from the State Treasury in payment of compensation, regardless of their source."

1. ■ *The record does not support Adcock's contention that he was a state employee whose compensation was paid from funds directly controlled by the state while he served as an inheritance tax referee.*

In his argument to the contrary Adcock relies upon *Greenaway* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 49 [74 Cal.Rptr. 452]. In holding that inheritance tax appraisers (the counterpart of today's referees) have an employment relationship with the state for purposes of workers' compensation benefits, the *Greenaway* court stated that inheritance tax appraisers received compensation directly from the state pursuant to former Revenue and Taxation Code section 14772. (*Id.,* at p. 52.) Since Adcock received compensation pursuant to Revenue and Taxation Code section 14774, the derivative of section 14772, he argues that he, like Greenaway, was "paid out of funds directly controlled by the state."

We disagree. Revenue and Taxation Code section 14774, like former section 14772, authorizes the treasurer of the county in which the referee acts to pay the referee for his services from the state inheritance tax funds held by the treasurer. (See also Rev. & Tax. Code, § 14791.) Thus we conclude that the inheritance tax referee is paid out of funds controlled by the county, rather than the state, when he receives compensation pursuant to Revenue and Taxation Code section 14774.

The record contains some evidence that Adcock received an indefinite, miniscule amount of compensation from funds directly controlled by the state because, as previously noted, when he reported upon the fair market value of transfers subject to the gift tax, pursuant to Revenue and Taxation Code section 16503, he received compensation in the form of state warrants.[1] Because the language of Government Code section 20012 does not require that any particular percentage of an employee's compensation come from "funds directly controlled by the state," Adcock claims that the trial court acted unreasonably and arbitrarily in concluding that his compensation from state funds was de minimis. He also claims that the trial court improperly considered the intent of the

---

[1]These payments should be reimbursed by the taxpayers. (See Rev. & Tax. Code, § 16504.)

Legislature inasmuch as Government Code section 20012 is unambiguous.

These claims lack merit. The fundamental rule of statutory construction requires a court to ascertain the legislative intent in order to achieve the purpose of the law. (See *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) While we are not unmindful of the well-established rule that pension legislation should be liberally construed, resolving all ambiguities in favor of the applicant, this rule of liberal construction should not be blindly followed to allow eligibility for those for whom the legislation was obviously not intended. (See *Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 822 [111 Cal.Rptr. 841].) Additionally, every statute must be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. (*Select Base Materials* v. *Board of Equal., supra.*)

Having examined Government Code section 20012 we think that the trial court reasonably concluded that the Legislature did not intend to provide retirement benefits for Adcock as an inheritance tax referee. He received a de minimis portion of his salary from the state, he personally paid his employee's workers' compensation premiums and the state never took any deductions from his salary.

2. ■ *Adcock has not established his right to PERS service credit pursuant to Government Code section 20930.*

Adcock contends that even if he does not qualify for service credit pursuant to Government Code section 20012, he is entitled to service credit in the PERS pursuant to Government Code section 20930, subdivision (f). Government Code section 20931 does provide that PERS members may elect to receive credit for public service, and section 20930, subdivision (f), defines public service as state employment "in which the person was not eligible for membership in the [PERS] if such ineligibility was solely because his compensation was paid from other than state-controlled funds. . . ." But Adcock still must establish that he was a state employee while he served as an inheritance tax referee. Despite one court's recognition of inheritance tax referees as state employees for purposes of workers' compensation protection (see *Greenaway* v. *Workmen's Comp. App. Bd., supra,* 269 Cal.App.2d at p. 52), several other factors—apart from the source of their compensation—suggest that they are not state employees who are eligible to participate in the PERS. In deciding that Greenaway should be considered a state employee for

purposes of workers' compensation the *Greenaway* court discussed the State Controller's ability to remove inheritance tax referees at will. (*Ibid.*) After *Greenaway* was decided, the Legislature, in 1970, enacted significant revisions of the statutory provisions concerning the selection, responsibilities and rights of inheritance tax referees (see Stats. 1970, ch. 1282, §§ 23-73, pp. 2331-2342) and added Revenue and Taxation Code section 14773, a statute that now limits the Controller's removal powers to 10 percent of the referees per county annually. Furthermore, the standards of performance of inheritance tax referees do not preclude their acceptance of other employment as long as that employment is not inconsistent, incompatible or in conflict with their duties as a referee. (See Rev. & Tax. Code, § 14772, and Cal. Admin. Code, tit. 18, § 14772.) Finally, we find it significant that in revising the provisions relevant to inheritance tax referees, the Legislature failed to designate them either as state employees or PERS members. Thus we reject Adcock's claim that he was a state employee who performed "state service" within the meaning of Government Code section 20930 while he served as a referee.

Having concluded that Adcock is not a state employee, we also reject his claim that the Legislature's failure to mention inheritance tax referees among the persons excluded from the PERS (See Rev. & Tax. Code, § 20330 et seq.) evidences its intent to include them in the PERS.

DISPOSITION

The judgment is affirmed.

Klein, P. J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 12, 1979. Bird, C. J., did not participate therein.