PREGERSON, Circuit Judge:
 

 The Bankruptcy Court for the Central District of California granted an injunction against California’s assessment of unemployment taxes, disability taxes, and personal income withholding taxes against Philip E. Brown measured by the compensation he paid to certain truck drivers. The bankruptcy court’s order was based on a finding that the drivers were independent contractors and not Brown’s employees, and thus, Brown was not liable for the taxes. The district court affirmed the bankruptcy court. Applying a de novo standard of review to undisputed facts, we conclude that the drivers were employees and not independent contractors. We therefore reverse the district court’s order affirming the bankruptcy court’s granting of an injunction.
 

 FACTS
 

 Brown, formerly doing business as J & B Produce Company, was a nonregulated carrier of farm produce by highway. Dealing exclusively with Riteway Enterprises, Inc., a produce transportation broker, J & B trucked produce from the west to the east coast of the United States. To transport the produce, J & B used: (a) trucks it owned, (b) trucks it leased, and (c) trucks owned by drivers who hauled for J & B.
 

 The State of California determined that drivers in category (c) were independent contractors; therefore, the State did not assess against Brown any taxes measured by the compensation he paid such drivers. However, the State contended that the drivers in categories (a) and (b) were Brown’s employees. Accordingly, for the period April 1, 1975 through December 31, 1977, the State assessed Brown for unemployment taxes, disability taxes, and personal income withholding taxes measured by the compensation that J & B paid to drivers in categories (a) and (b). These taxes, with interest and penalties, totalled $64,491.70
 
 *666
 
 as of June 2, 1981. Brown failed to pay the assessments, believing in good faith that the drivers were independent contractors and not his employees.
 

 Brown filed a voluntary petition in Bankruptcy and received a discharge on August 31, 1979, in the United States Bankruptcy Court for the Central District of California. He brought the instant suit in bankruptcy court against California on October 20, 1980, seeking an injunction against the State’s attempts to collect the allegedly owed taxes, which would be a non-dis-chargeable debt. Brown asserted that he did not owe the State any taxes because the drivers were properly classified as independent contractors, not employees. The bankruptcy court granted the injunction. The State appealed to the district court. The district court affirmed the ruling of the bankruptcy court. The State then appealed.
 

 The State contends that (1) the district court erred in affirming the bankruptcy court’s classification of Brown’s drivers as independent contractors instead of employees; (2) Brown’s erroneous belief, albeit in good faith, that the drivers were independent contractors rather than employees should not excuse him from paying any penalty on the tax owed; and (3) the district court erred in affirming the bankruptcy court’s holding that the State had the burden of proof.
 

 I. INDEPENDENT CONTRACTOR VERSUS EMPLOYEE
 

 A. Standard of Review
 

 The primary issue on appeal concerns the question whether the facts, which are not disputed, indicate that drivers in categories (a) and (b) were independent contractors or employees of J & B Produce Company. Where the facts are undisputed and credibility is not an issue, “our task is to determine whether a legal conclusion is contrary to law.”
 
 In re Bubble Up Delaware, Inc.,
 
 684 F.2d 1259, 1262 (9th Cir.1982);
 
 accord In re Eade,
 
 237 F.Supp. 320, 321 (S.D.Cal.1964) (holding that “[wjhere the review of the [Bankruptcy] Referee’s order is to test a conclusion of law based upon admitted or established facts, this Court is free to take a different view).
 
 See also Bonnette v. California Health and Welfare Agency,
 
 704 F.2d 1465, 1469 (9th Cir.1983) (holding that “[ajlthough the underlying facts are reviewed under the clearly erroneous standard, the legal effect of those facts — whether appellants are employers within the meaning of the FLSA— is a question of law”). Therefore,
 
 de novo
 
 review is the appropriate standard on this issue.
 

 B. Discussion
 

 The state contends that, based on the stipulated facts, the court should classify the drivers as employees of J & B Produce Company. Several relevant statutes, such as Cal.Unemp.Ins.Code § 601
 
 [1]
 
 and former Cal.Rev. & Tax.Code § 18809,
 
 [2]
 
 seek to define the term “employee” or “employment” but do so in such conclusory terms that the statutory definitions are not helpful. Therefore, we turn to the cases to resolve the issue before us, which is one of state law.
 

 
 *667
 

 Empire Star Mines Co., Ltd. v. California Employment Comm’n,
 
 28 Cal.2d 33, 43, 168 P.2d 686, 692 (1946), is the leading California case on the subject. There, the court stated:
 

 In determining whether one who performs services for another is an employee or an independent contractor,
 
 the most important factor is the right to control the manner and means of accomplishing the result desired.
 
 If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists....
 

 Other factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.
 
 [3]
 

 (Emphasis added.) The California Supreme Court has emphasized that the most significant factor is the right to control the means by which the work is accomplished; the other factors are merely “secondary elements.”
 
 Tieberg v. Unemp. Ins. Appeals Bd.,
 
 2 Cal.3d 943, 950, 88 Cal.Rptr. 175, 179, 471 P.2d 975, 980 (1970).
 

 The stipulated facts indicate that Brown did have the right to control the manner and means of accomplishing the desired result. First, J & B instructed the drivers on the times and places to report to work, pick up the cargo, and deliver it. Second, J & B, rather than the drivers, often selected assistant drivers for the trips. Third, J & B arranged the return trips. On the return trips, J & B leased its trucks to other carriers and compensated the drivers. Fourth, J & B secured the necessary carrier permits and vehicle licenses from the states through which the trucks passed in transporting the cargo. Fifth, upon Riteway’s request, J & B directed the drivers to telephone Riteway twice a day to report the position of J & B’s trucks. Sixth, J & B paid for the liability insurance and operating expenses of the trucks and required the drivers to (a) report mechanical breakdowns and other problems with the trucks, (b) obtain approval for repairs costing more than $25.00, and (c) maintain an accounting of the gas and oil expenses.
 

 The drivers were permitted to select their own routes, driving times, and speeds. However, “a certain amount of freedom ... does not change the character of the relationship, particularly where the employer has general supervision and control.”
 
 Grant v. Woods,
 
 71 Cal.App.3d 647, 653, 139 Cal.Rptr. 533, 536 (1977) (citation omitted). The facts, stipulated to by the parties, indicate that J & B exercised strong general supervisory powers which heavily outweighed the limited freedom accorded the drivers to choose their own routes, driving times, and speeds. In short, J & B maintained .significant control over the manner and means by which the drivers transported farm produce.
 

 
 *668
 
 With regard to the secondary factors stated in
 
 Empire Star Mines,
 
 some favor a finding of employee status while others favor a finding of independent contractor status. “Generally, however, the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.”
 
 Germann v. Workers’ Comp. Appeals Bd.,
 
 123 Cal. App.3d 776, 783, 176 Cal.Rptr. 868, 871 (1981). Of the two most significant secondary factors in this case, one favors an employee classification and the other favors an independent contractor classification. In determining employee or independent contractor status, courts have focused on whether the principal or the workman supplies the instrumentalities, tools, and the work place (factor (d)),
 
 see, e.g., Flickenger v. Indus. Accident Comm’n,
 
 181 Cal. 425, 431, 184 P. 851, 853 (1919) (finding that the driver, who provided his own truck, was an independent contractor), and whether payment was by the hour or by the job (factor (f)),
 
 see, e.g., Pire v. Gladding McBean & Co.,
 
 55 Cal.App.2d 108, 113, 130 P.2d 143, 145 (1942) (noting that the driver, an independent contractor, received no salary or wages but instead worked on a “load-to-load basis.”). In the case at bar, J & B provided the trucks (factor (d)), which militates in favor of an employee status. However, the company also paid the drivers by the trip rather than by the hour (factor (f)), which militates in favor of an independent contractor status.
 

 In
 
 Tieberg,
 
 the secondary factors heavily favored independent contractor status. The free-lance writers there engaged in an occupation distinct from the television producer who retained them (factor (a)); their work involved uncommon skills (factor (c)); the writers had no obligation to the television producer beyond the particular script they undertook to write (factor (e)); and the television producer paid the writers by the job rather than by the hour (factor (f)). Despite the abundance of secondary factors pointing toward independent contractor status, the court held that the freelance writers were employees and not independent contractors. The court emphasized that:
 

 These factors are merely evidentiary in-dicia of the right to control. Where, as here, there is ample independent evidence that the employer has the right to control the actual details of the writers’ work and that it exercises this right, the fact that, for example, the employee is paid by the job rather than by the hour appears to be of minute consequence.
 

 Tieberg v. Unemp. Ins. Appeals Bd.,
 
 2 Cal.3d at 953, 88 Cal.Rptr. 175, 471 P.2d 975.
 
 See also Isenberg v. California Employment Stabilization Comm’n,
 
 30 Cal.2d 34, 180 P.2d 11 (1947) (holding that free-lance jockeys were employees of the horse owner despite the fact that the owner retained the jockeys on a race-by-race basis and paid them by the race rather than on an hourly basis). Similarly, in the case at bar, the decisive factor is the control over the manner and means of accomplishing the result. This factor so heavily favors an employee classification that the secondary factor pertaining to method of payment does not alter the result.
 

 Our conclusion satisfies the public policy considerations that underlie the tax laws at issue. The California Legislature enacted the Unemployment Insurance Act in response to the rampant unemployment the entire nation experienced during the Great Depression.
 
 See Gillum v. Johnson,
 
 7 Cal.2d 744, 62 P.2d 1037 (1936). The unemployment insurance laws, which include provisions on both unemployment and disability insurance, have “a much broader object than the mere raising of revenue.”
 
 Wiltsee v. California Employment Comm’n,
 
 69 Cal.App.2d 120, 126-27, 158 P.2d 612, 616 (1945),
 
 quoting California Employment Comm’n v. Black-Foxe Military Inst.,
 
 43 Cal.App.2d Supp. 868, 872, 110 P.2d 729, 732 (1941). These laws establish a scheme to provide “benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.” Cal.Unemp. Ins. Code § 100 (West 1972). The California Legislature
 
 *669
 
 requires unemployment insurance and disability taxes to be set aside to alleviate the administrative and economic burdens suffered by unemployed workers.
 

 “In view of the purpose of these provisions [to ameliorate the hardships of unemployment] they should not be whittled down by narrow construction, nor should exceptions not clearly justified by their language be engrafted upon them by judicial interpretation.”
 
 California Employment Comm’n v. Black-Foxe Military Inst.,
 
 43 Cal.App.2d Supp. at 872, 110 P.2d 729. Accordingly, our holding, classifying the drivers as employees, is consistent with the purposes of the unemployment insurance legislation.
 

 II. GOOD FAITH
 

 The second issue on appeal concerns the question whether Brown would have to pay the penalty on the delinquent taxes if he, erroneously but in good faith, believed that the drivers were independent contractors rather than employees.
 

 A. Standard of Review
 

 The bankruptcy court held that the drivers were independent contractors; therefore, that court did not decide this question. The issue, which is a pure question of law, is subject to de novo review.
 
 Hoptowit v. Ray,
 
 682 F.2d 1237, 1245 (9th Cir.1982).
 

 B. Discussion
 

 Brown’s good faith belief that the drivers were independent contractors does not excuse his failure timely to pay the disputed unemployment and disability taxes. Cal.Unemp.Ins.Code § 1037 states that “[i]f a protest involving the contribution rate is pending when any contribution to which such rate relates is due, the employer
 
 shall pay the contribution
 
 at the rate ... furnished by the director.” (Emphasis added.) Accordingly, we conclude that the taxpayer, in the first instance, must pay the tax. And if the taxpayer believes that the tax was assessed erroneously, the appropriate remedy is a suit for refund.
 
 Empire Star Mines Co., Ltd. v. California Employment Comm’n,
 
 28 Cal.2d at 47, 168 P.2d 686. Here, Brown did not follow the proper procedure. He should have paid the disputed amount first and then sued for a refund. Thus, a so-called good faith excuse is of no avail to an employer who fails to pay unemployment and disability taxes.
 

 Whether an employer may assert a good faith excuse for failure to withhold personal income withholding taxes is governed by Cal.Rev. & Tax.Code § 18815(a). This section directs penalties against any person who fails to withhold’ taxes, unless such failure is due to “reasonable cause.” No California case has construed the term “reasonable cause” in the context of § 18815(a). However, an analogous federal statute provides guidance on this subject.
 
 Holmes v. McColgan,
 
 17 Cal.2d 426, 430, 110 P.2d 428, 430 (1941)
 
 cited in Rihn v. Franchise Tax Bd.,
 
 131 Cal.App.2d 356, 360, 280 P.2d 893, 895 (1955) (“[w]here ... the federal and state tax statutes and regulations are substantially identical, the interpretations and effect given them by the federal courts are highly persuasive”).
 

 Internal Revenue Code § 6651 provides for the imposition of a penalty upon failure to pay taxes “unless it is shown that such failure is due to reasonable cause and not due to willful neglect .... ” 26 U.S.C. § 6651. For purposes of § 6651, this court has defined reasonable cause as ordinary business care and prudence.
 
 Ferrando v. United States,
 
 245 F.2d 582, 587 (9th Cir.1957). Federal case authority is meager on the issue of failure to withhold and pay taxes because of a good faith belief that workers are independent contractors. However,
 
 Gilmore v. U.S.,
 
 443 F.Supp. 91 (D.Md.1977), is right on point. In
 
 Gilmore,
 
 the employer, a magazine subscription sales operator, failed to withhold federal income, social security, and unemployment taxes. The employer asserted that he believed that the solicitors engaged by him were independent contractors rather than employees. The court, after holding that the solicitors were employees, ab
 
 *670
 
 solved the employer from penalty payments.
 
 Id.
 
 at 98.
 

 Gilmore
 
 is distinguishable from the case at bar. There, the Internal Revenue Service (IRS) audited the employer on a number of occasions. During those audits, IRS agents learned that the employer had not withheld any employment taxes for his solicitors. Yet, the IRS never made any assessments against , the employer for withholding taxes. In these circumstances, the court held that the employer reasonably believed that the solicitors were independent contractors because the IRS failed to inform him that he owed any employment taxes.
 
 Id.
 
 at 98-99. In the case at bar, however, Brown did not rely on the actions or statements of any authorized government authority to provide any support for his belief that the drivers were independent contractors. We therefore conclude that he is not absolved from the payment of the penalty.
 

 III. BURDEN OF PROOF
 

 The briefs devote extensive space to the question of who has the burden of proof on the independent contractor-employee issue. There is no need for us to address this question. The outcome of this case does not turn on who has the burden of proof because the stipulated facts, in our view, strongly indicate that the drivers were J & B’s employees.
 

 CONCLUSION
 

 Given the stipulated facts, we find that the drivers were employees of J & B Produce Company. Therefore, California properly assessed unemployment taxes, disability taxes, and personal income withholding taxes against Brown. Moreover, we hold that Brown’s asserted good faith belief that the drivers were independent contractors does not excuse him from any penalty because of his failure to pay the taxes in question on time.
 

 Therefore, we REVERSE the district court’s holding, which affirmed the bankruptcy court’s grant of a preliminary injunction, and find Brown liable for the assessed taxes, with interest and penalties.
 

 [1]
 

 . Cal.Unemp.Ins.Code § 601 states that "‘[e]m-ployment’ means service, including service in interstate commerce, performed by an employee for wages or under any contract of hire, written or oral, express or implied.” implied.”
 

 [2]
 

 . Cal.Rev. & Tax.Code § 18809 (West 1970)
 
 repealed by
 
 Act of Sept. 19, 1980, ch. 1007 (effective July 1, 1981), applies to the state personal income withholding liabilities at issue. It defined an employee as "a resident or a nonresident individual who received remuneration for services performed within this state ...."
 

 This statute was repealed effective July 1, 1981. However, the California Legislature included the caveat that the repeal “shall not affect any ... right accruing or accrued, or any suit or proceeding that had not commenced in any civil cause, before such repeal; but all rights and liabilities under such laws shall continue, and may be enforced in the same manner, as if such repeal by this act had not been made.” Act of Sept. 19, 1980, ch. 1007, § 65 at 3244-45 (effective July 1, 1981). Therefore, this statute applies to the controversy at bar.
 

 [3]
 

 .
 
 Tieberg v. Unemp. Ins. Appeals Bd.,
 
 2 Cal.3d 943, 88 Cal.Rptr. 175, 471 P.2d 975 (1970), includes two additional factors, both found in the Restatement (Second) of Agency § 220 (1957). These are (1) the extent of control, and (2) whether the principal is or is not in business.
 
 Id.,
 
 at 950, 88 Cal.Rptr. 175, 471 P.2d 975. These factors will not be specifically addressed because the discussion on the control of the manner and means of accomplishing the result implicitly covers factor (1) above, and factor (2) is not significant to the outcome of the case before us.